## FLORENCE M. SCOTT v. KIRK MINNESOTA COMPANY AND ANOTHER.

135 N. W. (2d) 31.

April 30, 1965—No. 39,367.

*Mahoney & Mahoney,* for relator.

*Sullivan, McMillan, Hanft & Hastings* and *Edward T. Fride,* for respondents.

OTIS, JUSTICE.

Two orders of the Industrial Commission are here for review. One denies compensation to the dependents of the deceased employee, and the other denies a rehearing.

On February 14, 1961, at about 10 a. m., decedent, William R. Scott, was an employee of respondent Kirk Minnesota Company, assigned to defrosting cooler coils in a walk-in locker. This work required him to bring 5-gallon pails of warm water from the first floor to the third floor, on foot or by elevator, carry them 60 to 75 feet, and empty them over the coils with a small receptacle. At about noon on that day, decedent was found lying on his stomach in a semi-conscious condition with the lower portion of his body in the cooler. Decedent was hospitalized until February 26, 1961, and remained at his home until March 27, when he resumed his employment but was given less strenuous duties. Tests indicated that decedent had suffered a subarachnoid hemorrhage. Compensation of $45 a week was paid by the employer during the period of disability. On April 15 decedent suffered a second attack from which he died 2 days later.

The medical witnesses were in substantial agreement that on February 14 decedent had experienced a ruptured berry-type congenital aneurysm of the anterior communicating artery of the Circle of Willis, and that the seizure of April 15 was caused either by a second rupture or by a recurrence of the hemorrhage from the dissolution or breaking away of the blood clot which had formed after the first rupture. The medical issue was whether or not the rupture which occurred on February 14 was caused by decedent's work-related activities.

Three medical experts, including the employer's doctor who was the attending physician, stated there was a causal relationship between the original rupture and the exertion expended by decedent in carrying out his occupational duties. The physician who performed an autopsy testified but gave no opinion regarding causation. An attending neurologist did not testify for either party. Three experts called by the employer were of the opinion the rupture was spontaneous and unrelated to occupational activities. Thus confronted with a typically irreconcilable conflict in medical testimony, the referee and the commission adopted the version which they found the more persuasive and held relator had not sustained her burden of proof.

■ While relator now complains that the foundation for an opinion expressed by one of the doctors on whom the commission particularly relied was inadequate in that it ignored other medical testimony, no objection was made at the hearing. Moreover, it appears that the doctor's conclusion was predicated on all of the pertinent information regarding the origin and course of the illness which led to decedent's death, including the hospital records and autopsy report, and hence we find no error in receiving the opinion.

■ On the issue of causation, relator cites as controlling Krenz v. Krenz Oil Co. 186 Minn. 312, 243 N. W. 108. There the court sustained an award based on medical testimony that an employee's aneurysm had ruptured as a result of work-connected exertion. However, notwithstanding the Krenz decision, we cannot now say as a matter of law that medical testimony adduced in 1932 is conclusive on factfinders in 1963. Courts and commissions are sufficiently challenged by diametrically opposed views expressed in the same litigation without

attempting to reconcile opinions rendered by other experts in unrelated matters some 30 years earlier. Our function is limited to determining whether the commission's findings are justified by the evidence in the case before us and viewed in this light we have no difficulty in holding its decision to be amply supported by the record.[1]

■ It is the contention of relator that because the employer voluntarily awarded compensation during the period of the employee's initial disability the employer is now estopped from denying liability. Relator contends that the employer had a duty to proceed under Minn. St. 176.241 if payments to dependents were not to be resumed.[2] While we have held in a number of cases that the rights of the decedent and of his dependents are separate and distinct where death results from a work-connected disability, we have for limited purposes treated the two claims as one proceeding.[3] Here, however, there was a voluntary payment of compensation for a brief period of time, following which the employee resumed his normal occupational activities. We are of the opinion that § 176.241 has no application where the employee has returned to work and compensation has therefore been discontinued.

■ The commission declined to receive the first report of injury and other evidence offered by relator as admissions of the employer bearing on the factors which prompted the payment of compensation in the

---

[1]Anderson v. Armour & Co. 257 Minn. 281, 287, 101 N. W. (2d) 435, 439; Fisher v. Red & White Taxi Co. 270 Minn. 317, 133 N. W. (2d) 543. See, also, Hickory v. Hickory Insulation Co. Inc. 271 Minn. 74, 134 N. W. (2d) 879.

[2]Minn. St. 176.241 provides in part as follows: "Subdivision 1. Where an employee claims that the right to compensation continues, or refuses to sign or objects to signing a final receipt for compensation, the employer may not discontinue payment of compensation until he notifies the industrial commission in writing of his intention to do so.

\* \* \* \* \*

"Subd. 2. Except where the commission orders otherwise, until the notice and reports have been filed with the commission, the liability of the employer to make payments of compensation continues."

[3]Lewis v. Connolly Contracting Co. 196 Minn. 108, 115, 264 N. W. 581, 584; Nyberg v. Little Falls Black Granite Co. 202 Minn. 86, 93, 277 N. W. 536, 539.

first instance. The employer claimed that payment was made as the result of a mistake (apparently consisting of its own doctor's opinion regarding causation) and objected to litigating the reasons for the payments. The commission sustained the employer's objections, and relator now asserts it was error to refuse a rehearing directed at this issue. After reviewing the record, we conclude that although the proffered evidence was undoubtedly admissible,[4] under the circumstances its exclusion was harmless and the refusal to grant a rehearing was therefore not an abuse of discretion.[5]

In support of her contention that she has been prejudiced by the employer's assumption of liability with respect to the employee's temporary disability, relator states that she was thereby denied the opportunity to investigate more extensively the facts surrounding decedent's initial illness. Had the employer originally denied liability, relator asserts she could have established through decedent exactly what his activities had been on the morning of February 14 and could have interviewed other witnesses at a time when their memory of the events was fresh. While we agree that situations can arise where the uncontested payment of compensation may prejudice an employee's dependents if liability is subsequently denied, in our opinion this is not such a case. A relatively brief period elapsed between the original illness and death. Relator had available to her the history given by the decedent to his physicians, as well as the medical and hospital records regarding the cause of decedent's disability and demise. Relator does not suggest what decisive or dispositive evidence might have been forthcoming had the employer resisted decedent's claim in the first instance. The commission's decision is based on medical testimony that a ruptured aneurysm of the kind decedent suffered cannot under any cir-

---

[4] 2 Larson, Workmen's Compensation Law, § 79.41; Electro-Motive Division v. Industrial Comm. 411 Ill. 132, 139, 103 N. E. (2d) 489, 493; Industrial Comm. v. Johnson Pontiac, Inc. 140 Colo. 160, 162, 344 P. (2d) 186, 187. But see, McCune v. Industrial Comm. 260 Wis. 499, 502, 50 N. W. (2d) 683, 685; Spiller v. Industrial Comm. 331 Ill. 401, 403, 163 N. E. 406, 407, 60 A. L. R. 1397.

[5] Gustafson v. Ziesmer & Vorlander, Inc. 213 Minn. 253, 256, 6 N. W. (2d) 452, 454.

cumstances be the result of physical exertion. We therefore conclude that in the fact situation before us no prejudice has been shown, and the employer is not estopped from denying liability. The decisions of the Industrial Commission are affirmed.

Affirmed.