BERNARD GEORGE v. MARVIN L. GEORGE BUILDERS, INC., AND OTHERS.
J. E. SLATTERY CONSTRUCTION COMPANY AND ANOTHER, RELATORS.

164 N. W. (2d) 891.

January 31, 1969—No. 41224.

*Taylor Law Firm* and *Elmer W. Foster,* for relators.

*McLeod & Gilmore* and *Curtis C. Gilmore,* for respondent employer and insurer.

Heard before Knutson, C. J., and Nelson, Rogosheske, Sheran, and Frank T. Gallagher, JJ.

SHERAN, JUSTICE.

Certiorari to review a decision of the Workmen's Compensation Commission.

In workmen's compensation proceedings instituted by Bernard George, the referee who heard the matter found that the employee was suffering from 30-percent permanent partial disability of the back, 10 percent of which was attributable to a work-related accident occurring March 18, 1958, during his employment by J. E. Slattery Construction Company, insured by American Surety Company of New York, (termed collectively "Slattery Construction") and 20 percent of which was attributable to a work-related injury sustained April 25, 1964, while employed by Marvin L. George Builders, Inc., insured by American Policyholders Insurance Company (termed collectively "Builders Inc."). Payment of compensation was directed accordingly.

Upon appeal, the Workmen's Compensation Commission affirmed by a vote of 2 to 1. We are now asked by Slattery Construction to reverse the commission because of alleged error on the part of the referee who rejected evidence it offered in an effort to establish that the 1958 accident occurred in a way different from that described by the employee in his testimony and that the injury sustained by the employee on that date affected his wrist but not his back. The limited issue is whether this refusal to receive the proffered testimony and the subsequent refusal of the referee to permit a continuance to meet the objection to it constitutes prejudicial error. Resolution of the issue requires analysis of (a) the tes-

timony of the employee respecting the 1958 accident and his claim of back injury, and (b) the evidence which Slattery Construction offered in refutation. The employee has filed no brief in this court. Builders Inc. acknowledges its responsibility to pay compensation on account of any injury attributable to the 1964 accident but resists the effort of Slattery Construction to secure reconsideration of its claim that the 1958 accident had nothing to do with the employee's present disability.

## EMPLOYEE'S TESTIMONY

Bernard George testified that on March 18, 1958, he was climbing an electric pole to disconnect some wires when the hooks of his climbers slipped out of the pole, causing him to fall to the ground 15 to 20 feet below, where he landed on his back and broke his wrist.

He was taken to the Cairns Clinic at Redwood Falls, Minnesota, where he was treated for the injury to his wrist. The employee was not suffering any pain in his back on March 18 and did not complain of difficulty in the back area then. He was "laid up" at his home near Princeton, Minnesota, for about 2 weeks following this accident. During this period of time, he reported to Dr. Norman Metcalf of Princeton, Minnesota, for a "follow-up" examination. Although the employee noted severe pain in his back at about the belt line and radiating into his left leg, beginning about March 19, 1958, which became more acute as time passed, he returned to work for Slattery Construction the balance of that year. In 1959 he worked on a farm near St. Cloud, Minnesota. His back difficulty "kept getting worse." In 1960 he was employed in Wyoming as a ranch hand and construction worker, his back being particularly troublesome while he was doing the construction work. In 1961 he was employed in Minneapolis as a truckdriver, his back symptoms continuing with varying intensity. Except for some visits to a chiropractor (Dr. Hall, Princeton, Minnesota), he received no treatment for his back during the 1959-1962 interval and made no complaints to Slattery Construction or anyone else. In 1962 and 1963 he served as a private in the United States Army, but he was given limited duty because of his back. Even so, he was hospitalized and treated for back trouble at Fort Carson, Colorado, and at Fort Hood, Texas. Following his discharge from

the service, he worked briefly for Gopher Dry Well in Minneapolis as a carpenter and then began his employment for Builders Inc. continuing until he was injured on April 25, 1964. On that date he wrenched his back severely during the course of his work and, from that time on, the pain which he had experienced for the first time on March 19, 1958, became intense. A course of treatment followed at the Princeton Community Hospital and at the University Hospitals in Minneapolis. In November 1964, surgery was performed on his back.

### REJECTED EVIDENCE

The evidence offered in refutation of this testimony of the employee consisted of three reports filed with the Industrial Commission as required by law in 1958, including:

(a) Exhibit 1: A written report dated April 14, 1958, by Dr. Norman Metcalf of Princeton, Minnesota, concerning the examination of the employee made on March 31, 1958. In a space on the form calling for the history and date of the accident as given by the employee, this appears: *"Caught left hand in wire in Highline Construction on March 18, 1958."* (Italics supplied.) There is an absence of reference to complaints of back injury although the wrist injury was noted.

(b) Exhibit 2: A written medical report dated April 2, 1958, signed by Dr. William H. Inglis of Redwood Falls, Minnesota, reporting his observations of the employee on March 18, 1958, in which Dr. Inglis, stating the nature of the injury and his diagnosis, wrote: "Severe sprain left wrist." No mention of a back injury appears in the Inglis report.

(c) Exhibit 4: The employer's first report of injury, executed for Slattery Construction Company by J. E. Slattery, president, which contains this description of the accident:

"Describe fully how accident occurred: Was reeling up wire with take-up reel. He caught his hand between the wire and the reel."

In Workmen's Compensation Commission proceedings, strict rules of evidence are not generally observed.[1] Facts are frequently found on the

---

[1] Minn. St. 176.411, subd. 1, provides: "Except as otherwise provided by this chapter, when the commission, a commissioner or referee makes an in-

basis of medical reports filed with the commission or submitted by the parties.[2] There is no principle which *requires* the commission or its referee to accept in evidence unverified reports filed with it.[3] The frequency with which medical reports are accepted in evidence, however, perhaps gives rise to the assumption on the part of attorneys appearing before the commission that the reports will be received unless good reason appears for rejecting them.[4]

■ With respect to relators' exhibit 1, the employee's recitation of the facts of the accident as reported by Dr. Metcalf is wholly inconsistent with the employee's testimony. If Dr. Metcalf had appeared before the commission to give as testimony the information contained in this report, it would have been clear error to reject it. A prior statement by a party inconsistent with his testimony on an essential issue in the case reported by one to whom the statement was made is admissible as an ad-

---

vestigation or conducts a hearing, it or he is bound neither by the common law or statutory rules of evidence nor by technical or formal rules of pleading or procedure. The investigation or hearing shall be conducted in a manner to ascertain the substantial rights of the parties.

"Findings of fact shall be based upon competent evidence only."

See, Knaeble v. Custom Tool & Mfg. Co. 273 Minn. 515, 142 N. W. (2d) 92; Danussi v. Easy Wash, Inc. 270 Minn. 465, 134 N. W. (2d) 138; Johnson v. Iverson, 175 Minn. 319, 221 N. W. 65, 222 N. W. 508; Debeltz v. Oliver Iron Min. Co. 172 Minn. 549, 216 N. W. 240.

[2] The Industrial Commission in a Bulletin dated November 4, 1957, provided: "8. Submission of medical reports, by stipulation of the parties, in lieu of medical testimony is encouraged."

[3] See, Jurich v. Cleveland-Cliffs Iron Co. 233 Minn. 108, 46 N. W. (2d) 237; Scott v. Kirk Minnesota Co. 271 Minn. 96, 135 N. W. (2d) 31; Danussi v. Easy Wash, Inc. *supra.*

[4] The Industrial Commission in a Bulletin dated November 4, 1957, provided: "10. Continuances will be granted only for the most urgent cause.

"11. The following are not considered causes for continuance:

\* \* \* \* \*

"(c) Unavailability of a medical or other witness, if his deposition could have been taken between the time notice of hearing was sent and time of trial."

mission of a party-opponent[5] or, generally, for purposes of impeachment.[6] It is not possible to reconcile the testimony of the employee to the effect that he had fallen while climbing an electric pole, lighting on his back on the ground 15 to 20 feet below, as it appears in his testimony before the referee on September 16, 1966, with the statement made by him to Dr. Metcalf on March 31, 1958 (about 2 weeks after the accident) to the effect that he had caught his left hand in wire in high-line construction. It is difficult to reconcile his testimony that he suffered pain in his low back radiating into his left leg beginning on March 19, 1958, and caused by such a fall with the absence of recorded complaint in this respect in the Metcalf report. It is true that Dr. Metcalf could have been in error in reporting the accident history as he did. It is also possible that the version of the accident contained in his report was given by someone other than the employee. The report was not verified.[7] The adverse parties in the compensation proceedings would have been deprived of the opportunity of cross-examining Dr. Metcalf had exhibit

---

[5] Souden v. Johnson, 277 Minn. 87, 151 N. W. (2d) 767; State v. Johnson, 277 Minn. 230, 152 N. W. (2d) 768, certiorari denied, 390 U. S. 990, 88 S. Ct. 1190, 19 L. ed. (2d) 1297; Kvanli v. Village of Watson, 272 Minn. 481, 139 N. W. (2d) 275; Williams v. Jayne, 210 Minn. 594, 299 N. W. 853; McManus v. Nichols-Chisholm Lbr. Co. 105 Minn. 144, 117 N. W. 223.

[6] See, Hierl v. McClure, 238 Minn. 335, 56 N. W. (2d) 721; Klingman v. Loew's Inc. 209 Minn. 449, 296 N. W. 528; McManus v. Nichols-Chisholm Lbr. Co. *supra.*

[7] Rule 19 of the Rules of Practice of the Workmen's Compensation Commission provides: "Employees, employers or their insurers shall promptly file or cause to be filed in the St. Paul office of the Industrial Commission all reports of physicians attending or examining injured employee, in accordance with section 176.231, which requires every physician or surgeon who examines, treats or has special knowledge of any injury to any employee which is subject to the compensation act to report to the commission in writ-ing, within ten days after request by it, all facts within his knowledge relative to the nature of such injury and the extent of disability resulting therefrom, in order to facilitate the statutory obligation of the commission 'to keep itself fully informed as to the nature and extent of any injury to any employee' and to procure reports from physicians having knowledge of injuries aris-ing under the compensation act."

been received. These considerations may have been in the mind of the

referee when he rejected Slattery Construction's offer of the exhibit upon objection by Builders Inc.[8] But in view of the sharp conflict on an essential issue of the case, apparent from this report, we believe that Slattery Construction should have been allowed to submit the evidence of Dr. Metcalf to be taken under oath and subject to cross-examination either through deposition or by presenting him as a witness. Slattery Construction moved the referee for an order authorizing the submission of the testimony of Dr. Metcalf in this way, but the motion was denied. In our judgment, particularly in view of the weakness of the evidence of back injury attributable to the 1958 incident, this was error. The proffered testimony goes directly to the critical issue in this matter. We believe it to be needlessly prejudicial to deny Slattery Construction a reasonable opportunity to produce it in an acceptable form. We do not think the employee would have suffered serious prejudice had this course been followed.

■ A somewhat different situation applies to exhibit 2 (the Inglis report) and exhibit 4 (the employer's first report of injury).

(a) There is nothing in the Inglis report which is inconsistent with the testimony of the employee; he acknowledged that he had made no complaint of back injury on March 18. The report contains nothing one way or the other with respect to the manner in which the accident occurred.

(b) There is a conflict between the employee's testimony and the employer's first report of injury in so far as it relates the accident facts. But this report attributes no statement to the employee. Further, the employer who prepared this report is an interested party. Under ordinary circumstances a report made by him, even when filed with the Workmen's Compensation Commission pursuant to its requirements,[9] cannot

---

[8] Minn. St. 176.231, subd. 9, provides: "Reports filed with the commission under this section may be used in hearings held under this chapter, and for the purpose of state investigations and for statistics."

[9] Minn. St. 176.231, subd. 1, provides: "Where death or serious injury occurs to an employee during the course of employment, the employer shall report the same to the commission within 48 hours after its occurrence. Where any other injury occurs which wholly or partly incapacitates the employee from performing labor or service for longer than the remainder of the day or shift

be received as evidence in his favor over objection where the person making the report has not been subjected to cross-examination under oath.[10] Even so, because this matter must be remanded to the Workmen's Compensation Commission in order to permit the taking of the deposition of Dr. Metcalf, all parties should be afforded the opportunity of presenting in the proper way any testimony which will be of assistance to the commission or its referee in deciding what occurred on March 18, 1958. If, after receiving this testimony, the commission is satisfied that the version of the incident as given by the employee is correct, it is clear that its allocation of a part of the compensation burden to Slattery Construction is adequately justified by the evidence. If, on the other hand, the evidence is such as to persuade the commission that the accident occurred in the way described in the Metcalf report (relators' exhibit 1), a resolution of the case imposing full responsibility for compensation payments on Builders Inc. would be indicated.

Reversed and remanded.

during which the injury occurred, the employer shall report the injury to the commission within seven days from its occurrence. Where an injury has once been reported but subsequently death ensues, the employer shall report the death to the commission within 48 hours after he receives notice of such fact."

[10] Cf. Seymour v. Journal-Star Printing Co. 174 Neb. 150, 116 N. W. (2d) 297.