**Terrence JENDRO, Respondent,**

v.

**BROWN BOVERI TURBO MACHINERY CO., Relator,**

**Zurich-American Insurance Company, Relator,**

**Minnesota Department of Public Welfare, Intervenor.**

No. C1–84–730.

Supreme Court of Minnesota.

Oct. 12, 1984.

John R. Bridell, Minneapolis, for Brown Boveri Turbo Machinery Co.

Dale E. Mossey, St. Cloud, for Terrence Jendro.

COYNE, Justice.

In this compensation proceeding a divided Workers' Compensation Court of Appeals panel upheld a compensation judge's determination that a medical report offered in evidence by employee pursuant to Minn. Stat. § 176.155, subd. 5 (1983 Supp.), was admissible and furnished competent evidence to support a finding that employee has a 25 percent permanent partial disability of the back. That court also rejected the claim of the employer-insurer that the report should have been excluded on hearsay and foundational grounds. We affirm.

The sole factual issue was the extent of employee's permanent impairment resulting from a compensable low back injury sustained on February 18, 1980. At the time employee had severe low back pain and leg pain. He was totally disabled for several months, returning to a lighter job in November 1981. Since then he has had little medical treatment, but testified that he continues to have some pain in his low back and left leg, and his back sometimes "locks up." He said also that he cannot lift and that his pain worsens with prolonged sitting and standing.

The balance of the evidence relating to employee's disability was furnished in medical reports submitted by the parties pursuant to Minn.Stat. § 176.155, subd. 5 (1983 Supp.), effective July 1, 1983. This statute has effected a radical procedural change by requiring that "all evidence relating to health care must be submitted by written report as prescribed by the chief hearing examiner" except when the commissioner of the department of labor and industry or a compensation judge makes a written finding that the appearance of a treating or examining physician is "crucial to the accurate determination of the employee's disability."[1] The administrative regulation, Minn.Rule 1410.5300 (1984), requires that written reports from health care providers include:

A. the date of the examination;

B. the history of the injury;

C. the patient's complaints;

D. the source of all facts set forth in the history and complaints;

E. findings on examination;

F. opinion as to the extent of disability and work limitations, if any;

G. the cause of the disability and, if applicable, whether the work injury was a substantial contributing factor toward the disability;

H. the medical treatment indicated;

I. if permanent partial disability is an issue, an opinion as to whether or not permanent disability has resulted from the injury and whether or not the condition has stabilized; if stabilized, a description of the disability with a complete evaluation; and

J. the reason or reasons for the opinion or opinions.

Without objection the employer-insurer placed in evidence a report from Dr. Lumir Proshek, who had examined employee on behalf of the employer-insurer in December 1982. Dr. Proshek's report sets forth his diagnosis of lumbar disc disease with left sciatica and his rating of a 5 percent permanent impairment of the back. The employee then offered a two-part report from Dr. Leonard G. Titrud. The first part reported the doctor's examination of employee on June 8, 1982, and his conclusion that a lumbar spine CAT scan should be obtained to aid in determining the nature of employee's injury and the extent of his disability; the second part concluded:

This man did have a CT lumbar spine scan at the Metropolitan Medical Center June 19, 1982 and Dr. A.O. Rholl interpreted that study. It had been done at three levels, the study was normal at the level between the 3rd and 4th lumbar vertebrae and at the level between the 4th and 5th lumbar there was a diffuse posterior buldging [sic] of the anulus, but no herniated disc and the intervertebral foramina appeared normal. At the level between the 5th lumbar and 1st sacral there was a posterior buldge [sic] at the level of the intervertebral disc and it was difficult to be sure whether this represented herniated disc or a buldging [sic] anulus but from the localized buldge [sic] I would suspect probably that this is a relatively small herniated disc. The suberachnoid [sic] space appeared accurate as do the intervertebral foramina bilaterally.

This in conclusion does give evidence for an L5 S1 intervertebral disc protrusion. Therefore I believe he has had a lumbo-

---

**1.** The provision made mandatory a practice which the Workers' Compensation Court of Appeals and its predecessors had encouraged since 1957. *See George v. Marvin L. George Builders, Inc.,* 282 Minn. 375, 379, 164 N.W.2d 891, 895 (1969).

sacral contusion and straining injury and that he has had intervertebral disc injury at the level between the 5th lumbar and 1st sacral vertebrae and it is probable that this is herniating to the left side at this level to give him first sacral spinal nerve root irritative injury resulting in the pain which he has extending down his left lower extremity. I would place his permanent partial disability of his back to be 25 per cent.

Although the employer-insurer contended that the quoted portion should be excluded on grounds of hearsay and lack of foundation for the conclusion that the CAT scan "does give evidence for a L5 S1 intervertebral disc protrusion," both parts of the report were received in evidence. The compensation judge later found that employee has a 25 percent impairment.

■ On the employer-insurer's subsequent appeal challenging that finding, the majority of the Workers' Compensation Court of Appeals panel affirmed, holding the entire report admissible by reason of section 176.155, subd. 5, and holding also that the statute has precedence over judicially created rules of evidence. We agree with this analysis. The statute plainly rendered written reports "as prescribed by the chief hearing examiner" admissible, and it is undisputed that the report complied with the requirements of Minn.Rule 1410.5300 (1984). As we have recognized in other contexts, workers' compensation is purely a legislative creation. *Hendrickson v. George Madsen Construction Co.,* 281 N.W.2d 672, 675 (Minn.1979); *Schwartz v. Talmo,* 295 Minn. 356, 364, 205 N.W.2d 318, 323 (Minn.1973). In light of that fact, the legislature was not required to apply common law exclusionary rules in its determination of what evidence is admissible and competent in compensation proceedings.

■ Parties are, of course, entitled to procedural due process. *Koch v. Arnesen,* 322 N.W.2d 362 (Minn.1982). Section 176.-

155, subd. 5, however, affords adequate due process safeguards. As stated, it provides for the appearance of a physician or health care provider at the compensation hearing when his appearance is found to be "crucial to the determination of the employee's disability." Section 176.155, subd. 5, further provides:

A party may cross-examine by deposition a physician or health care provider who has examined or treated the employee. If a physician or health care provider is not available for cross-examination prior to the hearing and the physician's or health care provider's written report is submitted at the hearing, the compensation judge shall, upon request of the adverse party, require the physician or health care provider to testify at the hearing for the purpose of being cross-examined by the adverse party. All written evidence relating to health care must be submitted prior to or at the time of the hearing and no evidence shall be considered which was submitted after the hearing unless the compensation judge orders otherwise.

Even though the CAT scan and Dr. Rholl's report may represent the kind of data generally used by physicians to make diagnoses and determine treatment, it would have been better practice to lay a proper foundation for Dr. Titrud's conclusions.[2] Pursuant to the provisions of section 176.155, subd. 5, introduction of the CAT scan and Dr. Rholl's written report would have been a relatively simple matter.

On the other hand, the employer-insurer were furnished copies of Dr. Titrud's report long before the compensation hearing. If they had any doubt of the accuracy of Dr. Titrud's interpretation of the CAT scan or Dr. Rholl's report, they did not look to any of the protective procedures afforded by the statute. They made no effort to depose either Dr. Titrud or Dr. Rholl or to introduce into evidence the CAT scan and Dr. Rholl's report. They did not request

---

**2.** *Cf.* Minn.R.Evid., Rule 703, (1982) permitting an expert to base an opinion on facts or data "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject," whether or not the facts or data are admissible in evidence.

an order requiring the appearance of either doctor at the hearing. Nor did they request that a CAT scan be performed by a physician of their choosing. Their failure to make any effort to test the soundness of the conclusions reached by Dr. Titrud does not require a holding that the statute should be construed to require exclusion of his report.

Nor can we agree with the contention that, even if the report is admissible under section 176.155, subd. 5, it is not "competent evidence" complying with the requirement of Minn.Stat. § 176.411, subd. 1 (1982), that findings of fact "shall be based upon competent evidence only and shall comport with section 176.021." To construe a statute directing that evidence relating to health care must be submitted by written report as expressing a legislative intent that written medical reports shall be admissible into evidence but shall nevertheless be incompetent to prove any fact would be to attribute to the legislature the intent to bring about a result both absurd and futile. We conclude that Dr. Titrud's report, together with employee's testimony about his physical limitations and symptoms, furnished substantial support for the challenged finding of a 25 percent permanent partial disability.

Employee is allowed attorney fees of $400.

Affirmed.