**PEARSON v. C.P. BUCKNER STEEL ERECTION CO.**

[348 N.C. 239 (1998)]

RICHARD D. PEARSON, Employee-Plaintiff v. C.P. BUCKNER STEEL ERECTION
    COMPANY, Defendant-Employer, and LIBERTY MUTUAL INSURANCE COM-
    PANY, Defendant-Carrier

---

CARY HEALTH CARE CENTER, INC., d/b/a CARY MANOR NURSING HOME,
    Intervenor

No. 452PA97

(Filed 8 May 1998)

**1. Workers' Compensation § 220 (NCI4th)— medical
   expenses—amount exceeding Medicaid—liability of
   employer—subject matter jurisdiction**

The Industrial Commission had subject matter jurisdiction to
decide whether an employer who had previously been ordered to
pay an injured employee's reasonable and necessary medical
expenses was required to pay medical providers the difference
between the amount paid by Medicaid and the amount allowable
under the Workers' Compensation Act. The Commission's super-
visory power over its judgments includes the authority to enter
orders to enforce those judgments.

**2. Workers' Compensation § 220 (NCI4th)— medical
   expenses—amount exceeding Medicaid—liability of
   employer**

An employer who denies liability but is ordered to pay an
injured employee's reasonable and necessary medical expenses
under the workers' compensation law may not fulfill this obliga-
tion by merely reimbursing Medicaid where Medicaid has paid
medical providers a portion of the cost of treatment, but must
also pay medical providers the difference between the amount
covered by Medicaid and the full amount authorized under the
Industrial Commission fee schedule for medical expenses. The
obligation of the employer to pay reasonable and necessary med-
ical expenses under the workers' compensation law, and the abil-
ity of medical providers to accept such payments, is not con-
trolled or preempted by federal Medicaid statutes or regulations.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a deci-
sion of the Court of Appeals, 126 N.C. App. 745, 486 S.E.2d 723 (1997),
reversing an order of the Industrial Commission entered 19
December 1995. Heard in the Supreme Court 10 March 1998.

PEARSON v. C.P. BUCKNER STEEL ERECTION CO.

[348 N.C. 239 (1998)]

*The Jernigan Law Firm, by Leonard T. Jernigan, Jr., and N. Victor Farah, for plaintiff-appellant; and Lore & McClearen, by R. James Lore, for intervenor-appellant Cary Health Care Center, Inc.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Jeffrey A. Doyle, for defendant-appellees.*

FRYE, Justice.

The issue presented by this case of first impression is whether an employer who denies liability but is ordered to pay medical expenses under the Workers' Compensation Act (Act) may fulfill this obligation by merely reimbursing Medicaid where Medicaid has paid medical providers a portion of the cost of treatment or whether the employer must also pay medical providers the difference between the amount covered by Medicaid and the full amount authorized by the Act under the Industrial Commission (Commission) fee schedule for medical expenses.

This case arises out of an accident on 4 May 1992 in which plaintiff fell while at work at a construction site and sustained severe injuries resulting in quadriplegia. Although defendant-employer denied liability, by an opinion and award entered 7 February 1995, the Commission concluded that the accident arose out of and in the course of plaintiff's employment. Defendants were ordered to pay all of plaintiff's reasonable and necessary medical expenses, in addition to $299.67 per week in temporary total disability compensation. Defendants did not appeal this decision of the Commission.

On 6 November 1995, plaintiff's attorney notified the Commission that defendants had reimbursed Medicaid for amounts paid for plaintiff's medical care but refused to pay medical providers for the difference between their full charges and the amounts paid by Medicaid. On 8 November 1995, Cary Health Care Center, Inc. (Cary Health), which had provided medical services to plaintiff and received partial payment from Medicaid, moved to intervene and appear before the Commission and to require defendant-carrier to pay plaintiff's outstanding medical bills. Cary Health was allowed to intervene by order of the Commission filed 28 November 1995. The Commission treated plaintiff's letter as a motion for an order directing defendants to pay the medical providers the difference between the fees allowed under the Commission's fee schedule and the amounts paid by Medicaid. By an order dated 19 December 1995, the Commission granted inter-

**PEARSON v. C.P. BUCKNER STEEL ERECTION CO.**

[348 N.C. 239 (1998)]

venor's motion and ordered defendant-carrier to pay intervenor $49,883.81 for medical treatment provided to plaintiff. The Commission also granted plaintiff's motion, ordering defendant-carrier to pay plaintiff's other medical care providers the difference between the Medicaid amounts already reimbursed and the amount allowable for medical expenses under the Act, and ordered defendant-carrier to pay the cost of the action, including attorneys' fees, pursuant to N.C.G.S. § 97-88.

Defendants moved the Commission to reconsider its order; for an evidentiary hearing; and, in the alternative, to amend its order. These motions were denied on 6 March 1996, and defendants appealed to the Court of Appeals. The Court of Appeals reversed the Commission, holding that, by reimbursing Medicaid, defendants' responsibility for past medical expenses under the 7 February 1995 opinion and award had been met. The Court of Appeals further reversed the Commission's 19 December 1995 award of attorneys' fees to plaintiff and intervenor. On 6 November 1997, this Court allowed plaintiff and intervenor's joint petition for discretionary review.

**[1]** As an initial matter, we must address defendants' contention that the Commission lacked subject matter jurisdiction to enter its orders of 19 December 1995 and 6 March 1996. Defendants' position is that while the Commission has authority to determine the fees of health-care providers and approve the providers' charges, it exceeds the Commission's statutory jurisdiction to make a determination as to whether a health-care provider may receive payment pursuant to workers' compensation laws subsequent to accepting payment from Medicaid.

The jurisdiction of the Commission is limited and conferred by statute. *See Clark v. Gastonia Ice Cream Co.*, 261 N.C. 234, 238, 134 S.E.2d 354, 358 (1964); *Letterlough v. Akins*, 258 N.C. 166, 168, 128 S.E.2d 215, 217 (1962). Section 97-91 of the North Carolina General Statutes provides that "[a]ll questions arising under [the Workers' Compensation Act] . . . shall be determined by the Commission, except as otherwise herein provided." N.C.G.S. § 97-91 (1991). Thus, it is well established that the Commission is not a court with general implied jurisdiction. *See Hogan v. Cone Mills Corp.*, 315 N.C. 127, 137, 337 S.E.2d 477, 483 (1985). However, the Commission "possesses such judicial power as is necessary to administer the Workers' Compensation Act." *Id.* at 138, 337 S.E.2d at 483. This Court has recognized that the General Assembly intended the Commission to have

continuing jurisdiction of proceedings begun before it. *Id.* at 139, 337 S.E.2d at 484. We believe that the Commission's "supervisory power over its judgments," *id.* at 140, 337 S.E.2d at 485, includes the authority to enter orders to enforce those judgments. The authority to set and approve medical fees is granted to the Commission by statute. N.C.G.S. §§ 97-26(a), -90(a) (Supp. 1997). Having found that defendants are liable for plaintiff's reasonable and necessary medical expenses, the Commission retains jurisdiction over the case to determine which expenses must be paid and in what amount.

Defendants contend that the Commission did not have statutory jurisdiction to determine whether a medical provider's agreement with Medicaid precludes that provider from receiving payment pursuant to workers' compensation law subsequent to accepting payment under Medicaid. The primary issue, defendants argue, involves the interpretation and application of federal and state statutes and regulations enacting and implementing the Medicaid program. In this way, defendants frame the issue as a collateral dispute outside the scope of the Commission's jurisdiction. Defendants rely on *Eller v. J&S Truck Servs.*, 100 N.C. App. 545, 397 S.E.2d 242 (1990), *disc. rev. denied*, 328 N.C. 271, 400 S.E.2d 451 (1991), in which the Court of Appeals held that, despite its authority to approve attorneys' fees under N.C.G.S. § 97-90, the Commission's jurisdiction did not extend to cover a dispute between the plaintiff's attorneys over the division of those fees. We do not find *Eller* persuasive.

In this case, on 7 February 1995, the Commission ordered defendants to pay the reasonable and necessary medical expenses of plaintiff. Defendants did not appeal from that award. Approximately nine months later, plaintiff's attorney informed the Commission by letter that "[a] dispute has arisen between the parties regarding the extent to which the defendants are liable for past medical." The Commission treated plaintiff's letter as a motion to, in effect, require defendants to comply with the February opinion and award by paying the full amount owed pursuant to the Act. The issue before the Commission in this case is not analogous to the disagreement between the plaintiff's attorneys over the division of a lump sum awarded as fees in *Eller*. Here, the Commission was required to determine whether defendants had fulfilled their obligation to pay reasonable and necessary medical expenses under a duly entered award. We conclude that the Commission acted properly to enforce its earlier judgment and that it did not exceed the scope of its statutory authority. On this issue, we affirm the Court of Appeals.

PEARSON v. C.P. BUCKNER STEEL ERECTION CO.

[348 N.C. 239 (1998)]

**[2]** We now come to the substance of this case: whether an employer who denies liability but is ultimately ordered to pay an employee's medical expenses under this state's workers' compensation law may fulfill this obligation by reimbursing Medicaid for amounts paid to medical providers for a portion of the cost of the employee's medical treatment. We begin by reviewing the relevant statutory schemes.

The Workers' Compensation Act, N.C.G.S. ch. 97 (1991 & Supp. 1997), was enacted "in 1929 to both 'provide swift and sure compensation to injured workers without the necessity of protracted litigation,' and to 'insure[] a limited and determinate liability for employers.' " *Charlotte-Mecklenburg Hosp. Auth. v. N.C. Indus. Comm'n*, 336 N.C. 200, 203, 443 S.E.2d 716, 718-19 (1994) (quoting *Rorie v. Holly Farms Poultry Co.*, 306 N.C. 706, 709, 295 S.E.2d 458, 460 (1982)) (alteration in original). The rights of the employee and the liability of the employer under the Act "are founded upon mutual concessions" by which each party "surrenders rights and waives remedies" previously available. *Lee v. American Enka Corp.*, 212 N.C. 455, 462, 193 S.E. 809, 812 (1937). "The basic operating principle of the Act is that an employee is automatically entitled to certain benefits whenever he suffers either a personal injury by accident occurring in the course of the employment and arising out of it, or incurs an occupational disease." *Charlotte-Mecklenburg Hosp. Auth.*, 336 N.C. at 204, 443 S.E.2d at 719. The Act requires the employer to provide medical compensation to the injured employee, and the Commission may order medical compensation if the employer does not provide it. *Id.*; N.C.G.S. § 97-25.

Medicaid, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v (1994), was enacted by Congress in 1965 to establish a federal-state cooperative system of providing medical assistance to "families with dependent children and . . . aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396. Each participating state must develop a plan for medical assistance which complies with the requirements of Title XIX. *See Harris v. McRae*, 448 U.S. 297, 301, 65 L. Ed. 2d 784, 794 (1980); *see also Lackey v. N.C. Dep't of Human Resources*, 306 N.C. 231, 235, 293 S.E.2d 171, 175 (1982). North Carolina has elected to participate in the Medicaid program and has adopted a state plan for medical assistance. N.C.G.S. §§ 108A-54 to -70.5 (1997); 10 NCAC ch. 26. Medicaid, as implemented by the coordinate state plans, is intended only as a safety net for those unable to otherwise obtain adequate medical care, and thus,

state plans must take steps to ensure that Medicaid is the payor of last resort. *See, e.g.,* 42 U.S.C. § 1396a(a)(25)(A) (directing that a state plan for medical assistance must provide "that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services").

The purposes of these two statutory schemes do not appear to be inconsistent.

Congress has the power to preempt state law by virtue of the Supremacy Clause of Article 4 of the United States Constitution. The United States Supreme Court has stated:

Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. Pre-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation.

. . . .

The critical question in any pre-emption analysis is always whether Congress intended that federal regulation supersede state law.

*Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 368-69, 90 L. Ed. 2d 369, 381-82 (1986) (citations omitted).

Defendants contend, and the Court of Appeals agreed, that federal law controls the outcome of this case because the portion of the state medical assistance plan allowing providers to accept payment from third parties, formerly 10 NCAC 26K .0006(c) (Apr. 1990), now .0006(e) (Jan. 1996), conflicts with federal Medicaid regulations. Defendants assert that intervenor and other medical-care providers may not receive the outstanding portion of the cost of plaintiff's treatment ordered by the Commission because they previously accepted

payment from Medicaid. They point to 42 C.F.R. § 447.15, which states that a participating provider must accept, as payment in full, amounts paid by the Medicaid agency and any copayment required by the plan to be paid by the individual. By invoking this federal regulation, defendants seek to avoid full compliance with the order of the Commission that they pay the medical expenses of plaintiff which the Commission may determine to be reasonable and necessary.

Defendants rely on *Evanston Hosp. v. Hauck*, 1 F.3d 540 (7th Cir. 1993), *cert. denied*, 510 U.S. 1091, 127 L. Ed. 2d 215 (1994), in which a hospital filed an action against the Illinois Department of Public Aid (IDPA), the state Medicaid agency. The plaintiff-hospital sought to return a partial payment made by IDPA for the care of a formerly indigent patient in order to file a suit against the patient after he won a $9.6 million judgment in a tort action stemming from his accident. The United States Court of Appeals for the Seventh Circuit rejected the hospital's attempt to return the Medicaid payment and seek the full amount of the original bill from the now-solvent patient. In so holding, the *Evanston* court accused the hospital of attempting "to turn Medicaid upside down by converting the system into an insurance program for hospitals rather than for indigent patients." *Id.* at 544.

We note several distinguishing features of *Evanston* that convince us it is not controlling under the circumstances of the instant case. Significantly, this is not an action brought by a provider as an attempt to "get out of" an agreement with Medicaid. Additionally, *Evanston* involved a plaintiff's recovery under tort law, not an award pursuant to workers' compensation law. The decisive factor, however, is that the health-care providers in this case, including intervenor, are not seeking any additional payment from plaintiff, the patient. Unlike *Evanston*, intervenor and the other health care providers in this case seek to recover, under the Workers' Compensation Act, directly from defendant-carrier, which was obligated by order of the Commission to pay plaintiff's reasonable medical expenses. In the instant case, the state Medicaid program has already accepted reimbursement from defendants; Medicaid is now out of the picture, and it remains the responsibility and duty of the Commission to determine what medical expenses defendants are liable for and in what amounts.

Defendants' position is that plaintiff's medical-care providers that accepted Medicaid payments have been paid in full; thus, defend-

ants' obligation under the Commission's opinion and award was fulfilled by reimbursing Medicaid. If accepted, this position would effectively allow employers and workers' compensation carriers to substitute the Medicaid reimbursement rate for the Commission's fee schedule for medical expenses. To construe federal Medicaid statutes and regulations as preempting the state workers' compensation law under these circumstances would permit employers and carriers to reap a financial windfall in savings on medical expenses by denying liability for workplace injuries. This result would clearly undermine a central purpose of the Act, which is to provide "swift and sure" compensation without protracted litigation.

We do not find the state Workers' Compensation Act and federal Medicaid statutes or regulations to be in conflict. Neither do we find that, by establishing the Medicaid program, Congress expressed a clear intent to preempt state workers' compensation law or to relieve an employer of any part of its responsibility to provide medical compensation to an injured employee. We have examined the federal Medicaid statutes and regulations put forth by defendants, and we find no specific language therein referring to workers' compensation. Nor do we find any language which may reasonably be construed as relieving an employer from its obligation under state workers' compensation law to pay the reasonable medical expenses of an injured employee. Enforcement of the Act does not obstruct the objectives of Congress in enacting Medicaid. Moreover, it is not "physically impossible" to comply with both federal Medicaid law and the state law of workers' compensation. Thus, we conclude that the obligation of defendants to pay the reasonable and necessary medical expenses of plaintiff, and the ability of intervenor and other providers to accept such payment, is not controlled or preempted by federal Medicaid statutes or regulations.

We emphasize that there is no dispute in this case that intervenor and other medical-care providers sought payment from Medicaid because defendant-employer denied liability for plaintiff's injuries, and there is no contention that Medicaid was billed by intervenor or other providers prior to exploring the existence of other sources of payment in violation of state or federal Medicaid law.

For the foregoing reasons, we hold that the Commission's 19 December 1995 order directing defendants to pay intervenor and plaintiff's other health-care providers the difference between the amount reimbursed to Medicaid and the amount allowable under the Act was a proper exercise of its authority. We further hold that the

**LIBERTY MUT. INS. CO. v. DITILLO**

[348 N.C. 247 (1998)]

Commission correctly applied the workers' compensation law of this State and that such law is not preempted by federal Medicaid law. We therefore reverse the Court of Appeals' holding that the Commission's 19 December 1995 order was in error. Because of this decision, it is unnecessary to address plaintiff and intervenor's additional argument that this appeal was not properly before the Court of Appeals. We remand to the Court of Appeals for further remand to the Industrial Commission for reinstatement of the 19 December 1995 order.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.