LILLEHAUG, Justice.
Shortly after leaving his job at Atlas Staffing, Inc. ("Atlas"), respondent Anthony Gist was diagnosed with end stage renal disease ("ESRD")-kidney failure. His job with Atlas exposed him to silica, a known cause of ESRD. Gist sought workers' compensation benefits from Atlas and *27 its insurer, Meadowbrook Claims Services (collectively, "appellants"). Appellants denied coverage, and Gist began receiving treatment from respondent/cross-appellant Fresenius Medical Care ("Fresenius"). Fresenius billed Medicaid, Medicare, and private insurer Medica for the costs of Gist's treatment, and accepted payments from each.
After a hearing, the compensation judge found that Gist's silica exposure was a substantial contributing factor to his kidney disease, and ordered that appellants pay workers' compensation benefits. After dismissing Fresenius's cross-appeal as untimely, the Workers' Compensation Court of Appeals ("WCCA") largely upheld the compensation judge's decision. In the consolidated appeals brought by appellants and Fresenius, we affirm in part, reverse in part, and remand to the WCCA.
FACTS
Gist worked for Atlas, a temporary staffing agency, from September 2011 through June 2013. Atlas assigned him to Waltek Casting Company, which creates casting molds for boats, planes, and farming equipment engines. Gist's job at Waltek involved placing wax figures on a rack and then a conveyor, after which a robot would drop the figures into a silica-sand tank. He was also required to fill and clean the silica-sand tanks. Filling occurred 8 to 10 times per 8-hour shift, and the tanks were cleaned at least once per day.
Because exposure to silica sand is hazardous, Gist wore ear plugs, safety glasses, gloves, and a paper mask. Gist described the 2-hour cleaning process as hot, wet, and muddy. Silica sand got inside his pants and stuck to his skin.
Gist left the job on June 28, 2013, at age 50. About a month later, he was seen at Mercy Hospital "for evaluation of kidney concerns after being informed by his clinic that his blood work had evidence for kidney failure." Thereafter, Gist saw a number of doctors. In November 2014, he filed a claim petition seeking workers' compensation benefits from appellants.
The compensation judge held a hearing in August 2016, at which the sole issue relevant to this appeal was whether silica exposure was a "substantial contributing factor to [Gist's] kidney failure."[1] The parties stipulated that "[a]ll medical treatment to date has been reasonable and necessary" and that Gist was "permanently and total[ly] disabled." At the time of the hearing, approximately $1.5 million in medical bills and indemnity benefits were at issue.
A great deal of evidence regarding Gist's medical history was presented at the hearing. We summarize that history as follows:
• In February 2008, Gist was diagnosed "as having a left foot wound with cellulitis and elevated blood sugar, most likely diabetic."
• In June 2011, Gist was "diagnosed with hypertension, left-sided chest pain, mild anemia, and resolving diverticulitis."
• In July 2013, Gist was evaluated by Dr. James Lee and then hospitalized for acute renal failure. Gist told Dr. Lee that he believed that his kidney failure was due to silica exposure.
• An August 2013 biopsy showed that Gist had a condition "globally interpreted as irreversible, non-salvageable kidney failure."
• A week after his biopsy, Gist saw Dr. James Rusin, a family physician. Dr. *28 Rusin "did not feel silica had anything to do with [Gist's] kidney problem."
• On August 27, 2013, Gist saw Stephanie Gordon, a nurse practitioner. Gordon told Gist that "the kidney biopsy results were not consistent with findings of some type of exposure."
• On November 4, 2013, Gist was evaluated by Dr. Arthur Ney, a surgeon. Dr. Ney noted that Gist had "a history of ESRD ... possibly hypertension" and deemed him a "reasonable candidate for transplant." Gist was approved for a transplant.
• On November 12, 2013, Janet Andersen, a kidney transplant coordinator, "spoke with Dr. Kyle Onan, Nephrologist .... [Dr. Onam stated that it is] hard to say if the silica sand caused [Gist's] renal failure."
• On November 26, 2013, Gist had a follow-up appointment with Dr. Lee, who noted that "[o]f the information I have at my disposal, silicosis can be a cause of chronic renal failure."
• In February 2014, Gist started dialysis treatment with Dr. George Canas, who later issued a report opining that "the most likely, and most reasonable, cause of [Gist's kidney failure ] is through his exposure to silica as a result of his work through both a respiratory route and direct contact."
• In April 2014, Gist met with Dr. David Parker, an occupational medicine doctor, who advised him that silica exposure "was not the likely cause" of his kidney failure.
• In February 2015, Gist was examined by Dr. Merlin Brown, appellants' expert, who opined that "silica exposure was not a substantial contributing factor in the cause of [his] chronic kidney disease."
Gist received treatment from Fresenius Medical Care in Coon Rapids from July 2014 until June 2015, and in Michigan from June 2015 through June 2016. Fresenius intervened in this case in October 2015, seeking reimbursement from appellants for the difference between the treatment costs that it had billed to Medicaid and Medicare and what it was actually paid.[2] When the hearing was held before the compensation judge, Gist had not yet received a kidney transplant.
The compensation judge's decision turned on whether she credited one of Gist's treating physicians, Dr. Canas (a nephrologist), or the appellants' examiner, Dr. Brown (an internal medicine specialist). The judge found the opinion of Dr. Canas "more persuasive" than the opinion of Dr. Brown, and concluded that "the silica [Gist] was exposed to while working ... was a substantial contributing cause of [his] ultimate development of end stage renal failure." The judge also concluded that the Minnesota workers' compensation fee schedules applied "to all charges for services provided to [Gist] for the work-related condition while in the state of Minnesota." For services provided in Michigan, the laws and fee schedules of Michigan applied. Finally, the judge concluded that she lacked jurisdiction to interpret the Medicaid and Medicare laws, and ordered that appellants "pay to [Fresenius] ... in accordance with all other state and federal laws, [its] outstanding intervention interests associated with the employee's end stage renal disease." Appellants were also ordered to reimburse Medica and the Minnesota Department of Human Services ("DHS").
*29 The compensation judge's findings and order were served on the parties via U.S. mail on October 24, 2016. Fresenius's counsel, but not Fresenius itself, was served. On November 8, 2016, appellants filed a notice of appeal. The notice had been served on Fresenius the day before. Fresenius served a notice of cross-appeal by mail on November 22, 2016, which was received by the Office of Administrative Hearings ("OAH") on November 28, 2016. On May 12, 2017, the WCCA dismissed Fresenius's cross-appeal for lack of subject-matter jurisdiction, concluding that Fresenius's notice should have been filed by November 23, 2016.[3]
On June 21, 2017, the WCCA largely affirmed the compensation judge's decision. First, it held that "[s]ubstantial evidence, including medical expert opinion, supports the compensation judge's finding that [Gist's] exposure to silica sand ... was a substantial contributing factor to [his] kidney failure." Gist v. Atlas Staffing, Inc. , No. WC16-6019, 2017 WL 3400792, at *7 (Minn. WCCA Jun. 21, 2017). Second, it concluded that "the compensation judge properly determined she lacked jurisdiction to interpret and apply Medicaid and Medicare statutes and rules." Id. at *8. Third, it concluded that "the compensation judge properly rejected [appellants'] argument that a medical provider that accepts payments from Medicaid and Medicare is barred from receiving workers' compensation payment." Id. at *9. Fourth, it modified the compensation judge's order, striking the language that ordered payment to be made "in accordance with all other state and federal laws" because that language was "contrary to the determination ... that [the judge] lacked jurisdiction to apply federal law" and was "too vague to be enforceable." Id.
On the same day that appellants petitioned for a writ of certiorari, Fresenius moved to lift the stay of its appeal and consolidate the two appeals. We granted Fresenius's motion.
ANALYSIS
The parties raise five issues. First, appellants challenge the compensation judge's finding of liability, arguing that Dr. Canas's medical report lacked adequate foundation. Second, appellants argue that, under a federal Medicaid regulation, Fresenius may not obtain from them the amounts billed to, but not paid by, Medicaid.[4] Third, Fresenius challenges the WCCA's dismissal of its cross-appeal as untimely. Fourth, appellants argue that the WCCA erred by striking the "in accordance with all other state and federal laws" language from the compensation judge's order. Fifth, Fresenius argues that the compensation judge erred by concluding that the Minnesota workers' compensation fee schedules applied to its medical bills for treatment incurred prior to the finding that appellants were liable.
I.
We first consider whether the compensation judge improperly relied on Dr. Canas's report to conclude that Gist's work-related silica exposure was "a substantial contributing factor" to his kidney *30 disease. Appellants frame this issue as whether this report had an adequate factual foundation. But appellants failed to lodge a foundation objection when Dr. Canas's report was offered into evidence, did not move for oral testimony, and did not seek to cross-examine Dr. Canas.[5] See Scott v. Kirk Minn. Co. , 271 Minn. 96, 135 N.W.2d 31, 33 (1965) ("While relator now complains that the foundation for an opinion expressed by one of the doctors ... was inadequate in that it ignored other medical testimony, no objection was made at the hearing."). Thus, the correct question before us is whether, when viewing the entire record-including Dr. Canas's report-there is substantial evidence that supports the compensation judge's causation determination.
We will affirm the WCCA's decision upholding a compensation judge's decision unless the findings are manifestly contrary to the evidence. Hengemuhle v. Long Prairie Jaycees , 358 N.W.2d 54, 60 (Minn. 1984). We review the facts in the light most favorable to the decision below, and will not reverse unless "it is clear that reasonable minds would adopt a contrary conclusion." Id . at 61. But "where the evidence is conflicting or more than one inference may reasonably be drawn from the evidence, the findings of the compensation judge are to be upheld." Id. at 60 ; see also Anderson v. Frontier Commc'ns , 819 N.W.2d 143, 147 (Minn. 2012).
Here, the compensation judge was presented with conflicting medical reports. Dr. Canas treated Gist, reviewed his medical records back to 2005, and consulted medical studies to complete his report. His report concluded that "the most likely cause (as well as the most reasonable) for Mr. Gist's end stage kidney failure is through his exposure to silica as a result of his work exposing him ... both via a respiratory route as well as direct contact." Dr. Brown examined Gist, reviewed his medical records, and concluded that silica exposure was "not a substantial contributing factor" causing Gist's kidney disease.
Based on a thorough review of the record, we conclude that it was reasonable for the compensation judge to credit Dr. Canas's report. Dr. Canas is a highly credentialed expert, having been recognized as one of the state's top nephrologists. He personally treated Gist, and to complete his report he reviewed a decade of medical records. Although other doctors expressed doubts that silica exposure caused Gist's kidney failure, they presented no clear alternative causality for Gist's condition. Tellingly, even Dr. Brown, appellants' own expert, thought that Dr. Canas's report was reasonable. In an addendum report, Dr. Brown stated: "I have reviewed Dr. Canas' report. His view is reasonable .... There is not enough evidence to say with certainty that silica did cause the kidney failure. At the same time, it is reasonable to assume, it is in the differential diagnosis."
Accordingly, the compensation judge did not abuse her discretion by relying on Dr. Canas's report to find that work-related silica exposure was a substantial contributing factor to Gist's kidney failure. See Gianotti v. Indep. Sch. Dist. 152 , 889 N.W.2d 796, 803 (Minn. 2017) ("In weighing medical *31 evidence, a compensation judge has the discretion as the trier of fact to choose between competing and conflicting medical experts' reports and opinions."); see also Ruether v. State , 455 N.W.2d 475, 478 (Minn. 1990) ("We have frequently had occasion to point out that it is axiomatic that a conflict in the opinions of expert medical witnesses is to be resolved by the trier of fact.").
II.
Next, we consider whether appellants are liable for the difference between the cost of the services that Fresenius billed to Medicaid and what Medicaid paid for those services. The WCCA held that "the compensation judge properly rejected [appellants'] argument that a medical provider that accepts payments from Medicaid ... is barred from receiving workers' compensation payment for treatment provided to an injured employee." Gist , 2017 WL 3400792, at *9. Appellants challenge this holding, arguing that by accepting Medicaid payments under federal Medicaid rules, Fresenius received "payment in full" and is barred from recovering the unpaid balance from appellants.
In response, Gist and Fresenius ask us to extend the Spaeth -balance rule to the Medicaid context. Spaeth held that a treatment provider is "entitled to payment of his charges for medical services provided to the employee, to the extent allowed under the workers' compensation medical fee schedule," even if the provider has already received partial payment from a private, non-employer insurer. Spaeth v. Cold Spring Granite Co. , 56 Minn. Workers' Comp. Dec. 136, 148-49 (WCCA 1996) (Olsen, J., dissenting).[6] Appellants argue that the applicable Medicaid regulation, 42 C.F.R. § 447.15 (2016), is unambiguous, and would conflict with any Spaeth -balance rule in the Medicaid context.
A.
We begin by considering the meaning of section 447.15. "The interpretation of an administrative regulation presents a question of law that we review de novo." J.D. Donovan, Inc. v. Minn. Dep't of Transp. , 878 N.W.2d 1, 5 (Minn. 2016). "Like statutes, administrative regulations are governed by general rules of construction." White Bear Lake Care Ctr. v. Minn. Dep't of Pub. Welfare , 319 N.W.2d 7, 8 (Minn. 1982). "[W]hen the language of the regulation is clear and capable of understanding, we give no deference to the agency's interpretation ...." In re Cities of Annandale & Maple Lake NPDES/SDS Permit Issuance for the Discharge of Treated Wastewater , 731 N.W.2d 502, 515 (Minn. 2007).
The Medicaid regulation at issue here provides that:
A State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual.
42 C.F.R. § 447.15. This regulation is unambiguous. By its plain language, section 447.15 imposes a bright-line rule: when a provider participates in Medicaid, bills services *32 to Medicaid, and accepts Medicaid payment for those services, it accepts the amount paid as "payment in full," and thus cannot recover from third parties any unpaid amounts. Accordingly, after accepting a payment from Medicaid for services provided, a provider is barred from recovering any additional amounts for those services from a liable employer. If the federal government had wanted to exempt workers' compensation cases from this rule, it could have said so, just as it did in its Medicare regulations. See 42 C.F.R. § 411.31(b) (2016) ("With respect to workers' compensation plans ... a [Medicare] provider or supplier may bill its full charges and expect those charges to be paid unless there are limits imposed by [other] laws ...."). No such exception appears in section 447.15.[7]
Gist and Fresenius propose an alternative reading of section 447.15-that it only speaks to the provider-patient relationship and does not apply to a provider seeking payment from a third party.[8] We are not persuaded.
Gist and Fresenius's reading of section 447.15 is not supported by its plain language. The regulation does not distinguish between a provider seeking additional payment from a treated individual as opposed to a liable employer. See Wallace v. Comm'r of Taxation , 289 Minn. 220, 184 N.W.2d 588, 594 (1971) ("[C]ourts cannot supply that which the legislature purposely omits or inadvertently overlooks.").
Begging to differ, Fresenius asks us to read section 447.15 alongside part of 42 C.F.R. § 447.20 (2016), arguing that section 447.20 suggests that the "payment in full" provision of section 447.15 only applies when the provider is seeking additional payments from the treated individual. But sections 447.15 and 447.20 came into effect on different dates. The last substantive change to section 447.15 occurred in 1983. See Medicaid Program; Imposition of Cost Sharing Charges Under Medicaid , 48 Fed. Reg. 5730-01, 5735-36 (Feb. 8, 1983). Section 447.20 was first enacted in 1990. See Medicaid Program; State Plan Requirements and Other Provisions Relating to State Third Party Liability Programs , 55 Fed. Reg. 1423-02, 1433 (Jan. 16, 1990). Thus, we may only read these regulations together by invoking in pari materia -the related-statutes canon. Because section 447.15 is unambiguous, we cannot invoke in pari materia .[9] See *33 State v. Thonesavanh , 904 N.W.2d 432, 437 (Minn. 2017) (stating that in pari materia "is an extrinsic canon that applies only to ambiguous statutes").
Accordingly, because section 447.15 requires a provider that has accepted Medicaid payments to accept them as "payment in full," we must consider whether extending the Spaeth -balance rule would conflict with the federal regulation.[10]
B.
Under the Supremacy Clause of the United States Constitution, federal law preempts conflicting state law. U.S. Const. art. VI, cl. 2. "[T]he question of whether federal law preempts state law" is reviewed de novo. Angell v. Angell , 791 N.W.2d 530, 534 (Minn. 2010). We have previously held that only conflict preemption can exist in the Medicaid context. Martin ex rel. Hoff v. City of Rochester , 642 N.W.2d 1, 11 (Minn. 2002). Conflict preemption exists "when state law conflicts with federal law, either because compliance with both federal and state law is impossible or because the state law is an obstacle to the accomplishment of the purposes of the federal scheme." Id. "Preemption of state laws is generally disfavored," id. , but "[f]ederal regulations have no less pre-emptive effect than federal statutes," Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta , 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).
Because section 447.15 requires a provider that accepts a Medicaid payment to accept it as "payment in full," extending the Spaeth -balance rule to the Medicaid context would conflict with the federal regulation. If Fresenius recovered additional Medicaid-billed amounts from appellants under the Spaeth -balance rule, then its accepted Medicaid payment would not be a "payment in full." The federal regulation and the Spaeth -balance rule are incompatible. Accordingly, we decline to extend the Spaeth -balance rule to the Medicaid context.
III.
Next, did the WCCA err when it dismissed Fresenius's cross-appeal as untimely? Fresenius argues that the 30-day period to file a notice of appeal never commenced because the compensation judge's findings and order were not served on it directly. In light of the statute's plain language, we agree.
The compensation judge's findings and order were served via U.S. mail on October 24, 2016. The workers' compensation law provides that "within 30 days after a party in interest has been served with notice of an award or disallowance of compensation ... the party may appeal." Minn. Stat. § 176.421, subd. 1 (2016). "Where service is by mail, service is effected at the time mailed if properly addressed and stamped." Minn. Stat. § 176.285, subd. 1 (2016). Assuming proper service, the 30-day period to file a notice of appeal ran on Wednesday, November 23, 2016.
The OAH did not receive Fresenius's notice of cross-appeal until Monday, November 28, 2016.[11] It follows that Fresenius's *34 notice of cross-appeal was untimely filed unless an exception applies. One does.
Minnesota Rule 1415.0700 provides that "[s]ervice on the attorney is considered service on that party, except that all final orders, decisions, awards ... and notices of proceedings must also be served directly on the party." Id. , subp. 1 (2017) (emphasis added). The compensation judge's decision was a final order that needed to be directly served on the parties themselves.
Here, Fresenius itself was not served directly, and the OAH's proof of service shows that.[12] Therefore, Fresenius's time to cross-appeal had not expired by November 28. Further, section 176.285 provides that "[i]n case of nonreceipt ... an allowance shall be made for the party's failure to assert a right within the prescribed time." Minn. Stat. § 176.285, subd. 1 (emphasis added). Because Fresenius was not itself served with the compensation judge's findings and order, it would have been entitled to such an "allowance." Accordingly, Fresenius's notice of cross-appeal was timely.[13]
IV.
We now address appellants' argument that the WCCA improperly struck the "in accordance with all other state and federal laws" language from the compensation judge's findings and order. This language appears in Orders 3 and 4 of the compensation judge's findings and order.
Appellants argue that the WCCA should not have considered this issue because it was only raised in Fresenius's cross-appeal, which the WCCA dismissed. Plainly, the WCCA can only review the issues raised in a notice of appeal or cross-appeal. The statute governing appeals to the WCCA provides that "[o]n appeal ... the Workers' Compensation Court of Appeals' review is limited to the issues raised by the parties in the notice of appeal or by a cross-appeal." Minn. Stat. § 176.421, subd. 6 (2016). But this issue was raised, and by appellants themselves. Appellants' notice of appeal to the WCCA states that "the specific findings and orders appealed from are ... O[rders]: 1, 2, 3, 4, 5, and 6." Thus, Orders 3 and 4 were raised by appellants, and the WCCA had jurisdiction to consider and modify them. Moreover, we have reinstated Fresenius's cross-appeal.
V.
Because we conclude that Fresenius's cross-appeal was timely, Fresenius invites us to consider an issue raised solely in its cross-appeal to the WCCA: whether the Minnesota fee schedules apply to medical bills for treatment incurred prior to a finding of primary liability. Because the WCCA has special expertise in this area of law, Hengemuhle , 358 N.W.2d at 61, we decline to consider this issue and remand it for consideration by the WCCA.
*35 CONCLUSION
For the foregoing reasons, we affirm the WCCA decision in part, reverse in part, and remand to that court for further proceedings.
Affirmed in part, reversed in part, and remanded.
CHUTICH, J., took no part in the consideration or decision of this case.

The compensation judge's finding that silica exposure was not a substantial contributing factor in Gist's "skin lesions and cysts" has not been appealed.

The record reflects that Fresenius has been paid $20,678.75 of the $564,780.31 it billed to Medicaid, $13,160.76 of the $537,241.30 billed to Medicare, and $49,995.00 of the $533,153.08 billed to Medica.

Fresenius filed a petition for writ of certiorari on May 25, 2017, appealing the dismissal of its cross-appeal, which we stayed pending the WCCA's decision on the merits of appellants' appeal.

Appellants argued below that Fresenius is barred from collecting the outstanding balance of treatment costs billed to Medicaid and Medicare. In their brief to this court, appellants waived the preemption argument as to Medicare, solely arguing that "federal Medicaid law preempts state law as it relates to Spaeth balances."

Minnesota Rule 1420.2900, subpart 3, provides that "[i]f a party believes that the oral testimony of a physician ... is crucial to the accurate determination of the employee's disability, the party shall file a written motion," and subpart 4 provides that "[a]ll parties have the right to present evidence, to cross-examine witnesses, and to present rebuttal testimony." Minn. R. 1420.2900, subps. 3A, 4 (2017). The record does not reflect that appellants made any such motion.

We cite to Judge Olsen's dissent here because, on appeal, we reversed the WCCA by "adopt[ing] the rationale of the [WCCA] dissenting opinion." Spaeth v. Cold Spring Granite Co. , No. C4-96-2249, Order at *2 (Minn. Jan. 29, 1997). We have since referred to this concept-that a provider may collect from a liable employer the difference between the amount paid by a private insurer and the amount permitted under the fee schedule-as a "Spaeth balance." Gamble v. Twin Cities Concrete Prods. , 852 N.W.2d 245, 247 n.2 (Minn. 2014).

On this issue of federal law, we note also that multiple federal courts have held that the "payment in full" language bars a provider from recovering additional payments from any non-Medicaid source. See, e.g. , Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrecoverable Tr. , 410 F.3d 304, 318 (6th Cir. 2005) ("The clear import of these words is that the Medicaid payment is the total amount owed to the provider for the services rendered ...."); Rehab. Ass'n of Va., Inc. v. Kozlowski , 42 F.3d 1444, 1447 (4th Cir. 1994) ("Service providers who participate in the Medicaid program are required to accept payment of the state-denoted Medicaid fee as payment in full ... [they] may not attempt to recover any additional amounts elsewhere." (emphasis added)); Lizer v. Eagle Air Med Corp. , 308 F.Supp.2d 1006, 1009 (D. Ariz. 2004) ("This language prevents providers from billing any entity for the difference between their customary charge and the amount paid by Medicaid. Providers are not merely prohibited from balance billing patients themselves." (emphasis in original)).

Gist and Fresenius cite Pearson v. C.P. Buckner Steel Erection Co. , 348 N.C. 239, 498 S.E.2d 818 (1998), in support of their alternative reading of section 447.15. But Pearson engages in no substantive preemption analysis, and thus has little persuasive value.

Even if we were to read sections 447.15 and 447.20 together, we reject Fresenius's argument that section 447.20 undercuts the "payment in full" language of section 447.15.

Fresenius correctly points out that the compensation judge ordered appellants to reimburse DHS for payments already made, and now contends that this decision allows it to seek additional payment from appellants. But that DHS has been reimbursed does not change the fact that, prior to this litigation, Fresenius "accepted" Medicaid payments, thereby triggering the regulation's "in full" requirement.

To properly appeal, a party must "file the original notice ... with the chief administrative law judge and file a copy with the commissioner" within the 30-day period. Minn. Stat. § 176.421, subd. 4 (2016). We have previously held that "the meaning of the term 'filed' is plain and means that the notice of appeal must actually be received within the statutory period." Langer v. Comm'r of Revenue , 773 N.W.2d 77, 80 (Minn. 2009) (citing State v. Parker , 278 Minn. 53, 153 N.W.2d 264, 266 (1967) ).

By contrast, the proof of service shows that the other parties, and their counsel, if any, were served directly.

Fresenius argues, alternatively, that (1) because the OAH served the compensation judge's findings and order via U.S. mail, the "mailbox rule" entitled it to 3 additional days to file its notice of cross-appeal, thereby making its cross-appeal timely, or (2) the 30-day period should run from the date of receipt, not the date of mailing, which would extend the filing deadline to November 28, 2016. We need not consider these alternative arguments.