IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-46

No. 465A20

Filed 6 May 2022

DORIS G. CUNNINGHAM, Employee,

v.

THE GOODYEAR TIRE & RUBBER COMPANY, Employer, LIBERTY MUTUAL
INSURANCE COMPANY, Carrier.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of
the Court of Appeals, 273 N.C. App. 497 (2020), reversing and remanding an opinion
and award entered 30 July 2019 by the North Carolina Industrial Commission. Heard
in the Supreme Court on 4 October 2021.

*Law Offices of Kathleen G. Sumner, by Kathleen G. Sumner and David P.
Stewart; and Jay Gervasi, for plaintiff.*

*Young Moore & Henderson, PA, by Angela Farag Craddock, for defendant-
appellant.*

*The Sumwalt Group, by Vernon Sumwalt; and Lennon, Camak & Bertics,
PLLC, by Michael Bertics, for North Carolina Advocates for Justices, amicus
curiae.*

HUDSON, Justice.

¶ 1    The Goodyear Tire & Rubber Company (defendant-employer) and Liberty

Mutual Insurance Company (defendant-carrier) (together, defendants) appeal as of

right on the basis of a dissenting opinion from a decision of the Court of Appeals, in

which the majority held the North Carolina Industrial Commission erred in denying Doris G. Cunningham (plaintiff) her claim for disability compensation from defendants. On appeal, defendants argue the Court of Appeals erred in holding plaintiff's claim was not time-barred under N.C.G.S. § 97-24 thereby reversing the Full Commission's dismissal of plaintiff's claim based on an alleged 27 May 2014 injury, and by remanding the case to the Commission to determine whether plaintiff suffered a compensable injury under the Workers' Compensation Act. We affirm the decision of the Court of Appeals reversing the opinion and award of the Commission and remand for further remand to the Commission for consideration of the merits of plaintiff's 27 May 2014 claim.

## I.    Factual and Procedural Background[1]

Plaintiff, now 59 years old, began working for defendant-employer, the Goodyear Rubber and Tire Company, in 1999, was laid off and rehired in 2001, and worked continuously thereafter for at least 17 years. Since 2014, when the relevant events began, plaintiff has been working as a press operator. This physically demanding job requires plaintiff to walk at least eight miles a day, pick up tires, place them in a loader pan, and clear out jams when the tires backed up. Due to her height,

---

[1] Although in a workers' compensation case, our summary of the facts is ordinarily taken from unchallenged findings of the Industrial Commission, here we are called upon to re-find facts in order to determine an underlying but dispositive jurisdictional issue. Accordingly, we are not bound by those findings, as explained below, and base this summary on the evidence.

she frequently has to reach, climb, and lift. She is personally responsible for 15 machines that "cook" the tires, and when other workers are on break, she handles twice that amount. She picks up "anywhere from one thousand to fourteen hundred tires" during her typical 12-hour shift. Her production quota, or "expectancy" from defendant-employer, is the processing of fourteen-hundred tires per shift.

¶ 3        Plaintiff picks the tires up from a flatbed truck and places them into a loading pan, in order to scan them. When she lifts the tire off the flat bed, she pulls it towards her, stands it up, and flips it over to turn the barcode up, which she scans along with the paperwork to ensure the tire is the correct one for the mold. At that point a machine picks up the tires from the loading pan where they are molded and pressed and then returned to a conveyor belt. The tires sometimes get stuck in this process and, on a bad day, ten tires an hour might get stuck. Plaintiff had injured her back twice while lifting tires in 2011; she filed claims with the Commission and both claims were settled in 2012.

¶ 4        On 27 May 2014 during a twelve-hour shift, plaintiff attempted to pick a tire up off the truck, but the tire was stuck, causing plaintiff to hurt her back. She immediately notified her supervisor that she was hurt. The next morning when she woke up, she could not move. She filed an internal report titled a Form F159, or "Associate Report of Incident and Associate Statement of Work Related Accident." Plaintiff was placed on light duty for six weeks, and she returned to full-time work on

8 July 2014 without missing any work.

¶ 5          When defendant-employer received plaintiff's F159, it sent the information to defendant-carrier, Liberty Mutual, plaintiff-employer's insurance carrier for workers' compensation. Defendant-carrier used the information received from defendant-employer to complete a Form 19, Employer's Report of Employee's Injury, and filed it with the Commission. Defendant-carrier mailed a packet including the completed Form 19 and a blank Form 18, "Notice of Accident to Employer and Claim of Employee," to plaintiff. However, plaintiff testified that she never received these forms and that she believed her workers' compensation claim was already accepted because she had been placed on light duty, unlike for her 2011 injuries. She testified she was prepared to fill out a Form 18 in 2014 but was told by her union representative that "they" had already received her form.

¶ 6          After her 27 May 2014 injury, plaintiff received medical treatment through an onsite medical facility (the dispensary), as well as from Frank Murray, a physical therapist who contracts with defendant-employer to provide physical therapy treatment to defendant-employer's employees. Mr. Murray had treated Ms. Cunningham once on 10 October 2011 following her 18 September 2011 back injury and determined that "she had low-back pain, but it was beginning to resolve. She had no real limitations in range of motion or strength." Mr. Murray did not treat plaintiff again for back pain until after the 27 May 2014 injury on 3 June 2014.

¶ 7 On 3 June 2014, plaintiff reported to Mr. Murray that her pain was at a level of ten out of ten. By 9 June 2014, plaintiff's pain was "five out of ten at worse [sic], to two out of ten at best." Mr. Murray testified he treated plaintiff on 10, 13, 18, 23, and 24 June 2014, and by the last visit, plaintiff's "[r]ange of motion was full and painless."

¶ 8 On 23 February 2015, however, plaintiff returned to Mr. Murray, reporting that her back pain had never completely subsided since the 2014 injury, and that she felt a recent increase in pain, describing it as "eight out of ten down to four out of ten." Mr. Murray diagnosed plaintiff with lower back pain. On 3 March 2015, Mr. Murray saw plaintiff again and she reported her pain as between "three out of ten to five out of ten."

¶ 9 Plaintiff did not return to the dispensary and Mr. Murray again until 25 April 2017. She testified that the reason she did not return until 2017 was that she began experiencing foot pain in addition to back pain and was referred to a podiatrist, Dr. Mark Thomas Eaton, in March 2016. Dr. Eaton initially diagnosed her with plantar fasciitis. However, following extensive treatment for plantar fasciitis, Dr. Eaton informed plaintiff that she had been misdiagnosed and that her problems did not come from her feet, but were caused by her back problems stemming from her 27 May 2014 injury.

¶ 10 Plaintiff returned to Mr. Murray for treatment for her back pain on 25 April 2017. Mr. Murray testified that "[plaintiff] didn't indicate that there was anything new

or that something happened [in 2017]. Her response was, no, nothing happened. It—this never has completely gone away." Mr. Murray testified there was "no precipitating episode" of her back pain in 2017 and that her pain reflected "episodic increases and decreases from the first time that [he] saw her."

¶ 11        On 28 April 2017, plaintiff visited Kelly Avants, the nurse case manager, at the dispensary. Ms. Avants told plaintiff that defendant-carrier closed her file because "she reached the statute of limitations in regard to her back claims" and they would not cover further treatment. On 8 May 2017, plaintiff reported that she had been injured again on 25 April 2017 from a stuck tire and she felt pain in her lower back.

¶ 12        David Jones, a neurosurgeon who had previously seen plaintiff for her 2011 injury, evaluated plaintiff on 19 June 2017 and 18 July 2019, following an MRI. Based on the MRI, Dr. Jones concluded that plaintiff had degeneration in the last two discs of her spine, that one of the discs had a "small far lateral disc bulge," that the second "had a more focal right-sided disc protrusion," and that both could irritate nerve roots. Dr. Jones testified it was "more than likely" that a 2017 injury exacerbated plaintiff's 27 May 2014 injury, and that "once you hurt your back the first time you are more likely to injure your back again," but there was no way to determine to what extent each injury caused her current condition.

¶ 13        On 19 May 2017, plaintiff filed separate Form 18s with the Commission for the alleged incidents on 27 May 2014 and on 25 April 2017, respectively. Defendants filed

a Form 61 denying the 27 May 2014 claim and moving to dismiss the claim, arguing that the action was time-barred because it was not filed within two years of the date of the alleged injury. The matters were consolidated and on 13 December 2018, the Deputy Commissioner entered an opinion and award denying the 25 April 2017 claim and dismissing the 27 May 2014 claim for lack of jurisdiction. Regarding the 27 May 2014 injury, the Deputy Commissioner found that plaintiff did not file a claim for compensation until 29 May 2017 and that plaintiff last received medical treatment related to that injury on 3 March 2015. The Deputy Commissioner concluded plaintiff failed to file her claim within two years of either the date of the incident or the last payment of medical compensation and the claim was therefore time-barred under N.C.G.S. § 97-24(a). Regarding the 25 April 2017 claim, the Deputy Commissioner concluded the evidence in the record did not support a compensable injury.

¶ 14        Plaintiff appealed to the Full Commission, specifically arguing that she last received payment for her 27 May 2014 injury on 25 April 2017 and, therefore, had filed her claim within two years of the last payment of medical compensation. On 30 July 2019, the Full Commission entered an opinion and award dismissing the 27 May 2014 claim for lack of jurisdiction and denying the 25 April 2017 claim. Plaintiff appealed to the Court of Appeals.

¶ 15        In a divided opinion authored by Judge Brook, the Court of Appeals reversed the opinion and award entered by the Commission after holding that compliance with

the requirement of N.C.G.S. § 97-24(a) is a jurisdictional fact reviewed for the greater weight of the evidence, finding "that the 25 April 2017 visit was related to Plaintiff's May 2014 injury," and on that basis holding that the Commission erred in concluding that plaintiff's claim was time-barred by N.C.G.S. § 97-24(a). *Cunningham v. Goodyear Tire & Rubber Co.*, 273 N.C. App. 497, 506–07 (2020). Judge Tyson dissented from the majority opinion, arguing that whether a claim is time-barred by N.C.G.S. § 97-24(a) is governed by the same standard of review as other conclusions in an order and award from the Industrial Commission: "(1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision." *Id.* at 510 (quoting *Simmons v. Columbus Cty. Bd. of Educ.*, 171 N.C. App. 725, 727–28 (2005)). Judge Tyson concluded that "[t]he majority's opinion exceeds its lawful scope of appellate review, reweighs the evidence and credibility of the testimony as finders of fact, to reverse the Commission's opinion and award." *Id.* at 513.

¶ 16     Defendants timely appealed on the basis of the dissenting opinion as of right under N.C.G.S. § 7A-30.

## II.     Analysis

¶ 17     On appeal, defendants argue the Court of Appeals (1) exceeded its lawful scope of appellate review by reweighing the evidence and assessing credibility of the testimony as finders of fact in order to reverse the Industrial Commission's Opinion

and Award determining that Plaintiff's workers' compensation claim of injury on 27 May 2014 was barred under N.C.G.S. § 97-24; and (2) erred by failing to determine that the Industrial Commission's conclusion that Plaintiff's claim is barred under N.C.G.S. § 97-24 is supported by findings of fact, which are based upon competent evidence such that the Commission's Opinion and Award should have been affirmed. First, we hold that whether a workers' compensation claim was barred because the claim was filed after the two-year limit set by N.C.G.S. § 97-24 is a jurisdictional matter that is subject to de novo review, including of the facts, on appeal. Second, we hold the Court of Appeals properly determined that the Industrial Commission erred in concluding that plaintiff's claim is barred. Accordingly, we affirm the judgment of the Court of Appeals.

**A.  Standard of Review**

¶ 18       Defendants first argue the Court of Appeals erred in holding that whether a plaintiff complied with the requirements of N.C.G.S. § 97-24 is a "jurisdictional fact" subject to a de novo standard of review. In a question of first impression for this Court, defendants argue the standard of review on appeal for Commission findings on compliance with the statute's timely filing requirement is a competent evidence standard of review, rather than de novo review as applied by the Court of Appeals

below.[2] We disagree.

¶ 19     Under our precedents, we ordinarily review an order of the Full Commission to determine "whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Medlin v. Weaver Const., LLC*, 367 N.C. 414, 423 (2014) (quoting *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116 (2000)). Ordinarily, "on appeal, this Court 'does not have the right to weight the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Adams v. AVX Corp.*, 349 N.C. 676, 681 (1998) (quoting *Anderson v. Lincoln Const. Co.*, 265 N.C. 431, 434 (1965)). However, when reviewing findings of fact by the Commission on which the scope of its jurisdiction depends, we apply a de novo standard of review. *See Richards v. Nationwide Homes*, 263 N.C. 295, 303–04 (1965) ("When a [party] challenges the jurisdiction of the Industrial Commission, the findings of fact made by the Commission, on which its jurisdiction is dependent, are not conclusive on the superior

---

[2] Although defendants in their notice of appeal framed their first issue generally as the Court of Appeals "reweighing" the evidence, in their brief they only argue that findings regarding the timely-filing requirement are not "jurisdictional facts" and, accordingly, are subject to a competent-evidence standard of review. That precise issue was not specifically set out in the dissenting opinion below, which instead expressed the view that all findings made by the Commission are to be subject to a competent-evidence standard without distinguishing findings that are jurisdictional. *See Cunningham*, 273 N.C. App. at 513. Although defendants' argument appears to exceed the scope of review under Appellate Rule 16(b), we exercise our discretion to suspend the rules and reach it. *See* N.C. R. App. P. 2 (2021).

court, but the superior court has the power . . . on appeal, to consider all the evidence in the record, and to make therefrom independent findings of jurisdictional facts."); *id.* at 304 (" 'As a general rule the court will not accept as conclusive findings of fact of the Commission concerning a jurisdictional question, but will weigh evidence relating thereto and make its own independent findings of fact.' " (quoting 100 C.J.S. Workmen's Compensation § 763(7), p. 1216)). Accordingly, we have held that "the finding of a jurisdictional fact by the Industrial Commission is not conclusive upon appeal even though there be evidence in the record to support such finding. The reviewing court has the right, and the duty, to make its own independent findings of such jurisdictional facts from its consideration of all the evidence in the record." *Lucas v. L'il General Stores*, 289 N.C. 212, 218 (1976).

¶ 20        N.C.G.S. § 97-24(a) provides that a claim is

> forever barred unless (i) a claim or memorandum of agreement as provided in G.S. 97-82 is filed with the Commission or the employee is paid compensation as provided under this Article within two years after the accident or (ii) a claim or memorandum of agreement as provided in G.S. 97-82 is filed with the Commission within two years after the last payment of medical compensation when no other compensation has been paid and when the employer's liability has not otherwise been established under this Article.

N.C.G.S. § 97-24(a) (2021). Defendants argue the Court of Appeals erred in holding that compliance with N.C.G.S. § 97-24(a) is a jurisdictional fact subject to de novo review, contending instead that this Court expressly rejected the view that a finding

regarding compliance with the timely filing requirement under N.C.G.S. § 97-24 is a jurisdictional fact in *Gore v. Myrtle/Mueller*, 362 N.C. 27 (2007). Plaintiff, in turn, argues the Court of Appeals correctly held that a finding on compliance with N.C.G.S. § 97-24 is a jurisdictional fact and *Gore* provides no support for defendants' position.

¶ 21      In *Biddix v. Rex Mills*, 237 N.C. 660 (1953), this Court described the role of N.C.G.S. § 97-24's timely-filing requirement in giving rise to the jurisdiction of the Commission:

> The underlying spirit and purpose of the [Workers' Compensation] Act is to encourage and promote the amicable adjustment of claims and to provide a ready means of determining liability under the Act when the parties themselves cannot agree. The Industrial Commission stands by to assure fair dealing in any voluntary settlement and to act as a court to adjudicate those claims which may not be adjusted by the parties themselves.
>
> But the Commission has no authority—statutory or otherwise—to intervene and make an award of any type until its jurisdiction as a judicial tribunal has been invoked in the manner prescribed in the Act under which it operates.
>
> The claim is the right of the employee, at his election, to demand compensation for such injuries as result from an accident. If he wishes to claim compensation, he must notify his employer within thirty days after the accident, G.S. §§ 97-22, 97-23, and if they cannot agree on compensation, he, or someone on his behalf, must file a claim with the Commission within twelve months after the accident, in default of which his claim is barred. G.S. § 97-24. *Thus the jurisdiction of the Commission, as a judicial agency of the State, is invoked.*

*Biddix*, 237 N.C. at 662–63 (emphasis added). Moreover, despite holding the employer in that case should not be estopped from raising the timely-filing requirement, this Court noted that it did not "hold an employer may not by his conduct waive the filing of a claim within the time required by law. The law of estoppel applies in compensation proceedings as in all other cases." *Id.* at 665. Accordingly, in *Biddix* long before *Gore*, this Court recognized both that estoppel may in some circumstances bar assertion of the timely-filing requirement and that the timely-filing requirement under N.C.G.S. § 97-24 is jurisdictional in nature.

Contrary to defendants' argument, we did not deviate from that view in *Gore*. In *Gore*, we held that a party may be equitably estopped from asserting the two-year filing requirement under N.C.G.S. § 97-24 as an affirmative defense. *Gore*, 362 N.C. at 40. The plaintiff in *Gore* had alleged that she experienced two work-related injuries but did not file a Form 18 for either incident with the Commission within the two-year filing limit under N.C.G.S. § 97-24. The Commission found that the plaintiff had filled out the Form 18 with the employer's human resources manager, but that the manager lost the forms unintentionally, and furthermore that "[t]he plaintiff was under the reasonable belief and reasonably relied on her perception that the forms would be properly filed with the Industrial Commission." *Id.* at 30. The Court of Appeals reversed, holding the timely-filing requirement was not satisfied and, therefore, the plaintiff's claims were barred.

This Court disagreed, reversing the Court of Appeals and holding the doctrine of equitable estoppel may bar a defendant from raising the timely-filing requirement as an affirmative defense. *Id.* at 40. This Court in *Gore* advanced several rationales for its holding. First, we reasoned that "[t]his principle is consistent with the general guideline that the Workers' Compensation Act requires liberal construction to accomplish the legislative purpose of providing compensation for injured employees, and that this overarching purpose is not to be defeated by the overly rigorous 'technical, narrow and strict interpretation' of its provisions." *Id.* at 36 (quoting *Guest v. Brenner Iron & Metal Co.*, 241 N.C. 448, 452 (1955)). Second, we noted that the Court of Appeals addressed the question 22 years before *Gore* in *Belfield v. Weyerhauser Co.*, 77 N.C. App. 332 (1985), and held that equitable estoppel could prevent a party from invoking the timely-filing requirement and reasoned that "[w]e have been particularly reluctant to interfere with past precedents when . . . litigants have arranged their affairs and 'rights have become vested which will be seriously impaired if the rule thus established is reversed.'" *Gore*, 362 N.C. at 37 (quoting *Hill v. Atlantic & N.C. R. Co.*, 143 N.C. 539, 573 (1906)). Finally, we observed that the rule was consistent with the approach of a majority of courts in other states, citing *Larson's Workers Compensation Law* for the statement that "modern application of estoppel and waiver in the present context serves 'as an antidote to the earlier approach, which was the highly conceptual one of saying that timely claim (and

sometimes even notice) was "jurisdictional[.]" ' " *Id.* at 38 (quoting *Larson's*, 7 § 126.13[1]).

¶ 24        Defendants seize on this last rationale and our reliance on *Larson's* to argue that in *Gore* we necessarily held that a finding as to whether the plaintiff satisfied the timely-filing requirement is not a "jurisdictional fact" which is subject to de novo review. A close examination of our reasoning in that decision reveals that defendants' reliance is misplaced. In our discussion of the approaches of other states on the question presented in *Gore*, we cited *Larson's*, which characterized the minority approach to the issue of whether equitable estoppel could bar a defendant's invocation of the timely-filing requirement as "jurisdictional" and described that approach as one that exalted the timely-filing requirement as "a defense outside the reach of waiver, estoppel, or anything else." *Id.* But simply because we cited *Larson's* for the analysis of caselaw from other states and its characterization of the minority view, it does not follow that, based on the treatise's description of that view as "jurisdictional," we abandoned well-established caselaw that the timely-filing requirement is a condition precedent for the exercise of jurisdiction by the Commission. To the contrary, in *Gore* itself, we reaffirmed that "if the employee follows this procedure [of timely filing under the statute], "the jurisdiction of the Commission, as a judicial agency of the State, is invoked." *Id.* at 34. Accordingly, our discussion of the analysis in *Larson's* is limited to acknowledgment of the minority view among other states

that assertion of the timely-filing requirement as a bar to a workers' compensation claim is not limited by the doctrine of equitable estoppel.

¶ 25    These seemingly contradictory statements in *Gore*—recognition of the jurisdictional nature of the timely-filing requirement as a condition precedent and rejection of a "jurisdictional" approach to equitable estoppel—can be reconciled. Under North Carolina law, satisfaction of the timely-filing requirement is a condition precedent to the exercise of the Commission's jurisdiction and, accordingly, implicates the subject-matter jurisdiction of the Commission.[3] However, under *Gore*, unlike questions of subject-matter jurisdiction in other contexts, a defendant may be barred by equitable estoppel from raising lack of jurisdiction for failure to comply with the timely-filing requirement of N.C.G.S. § 97-24 as an affirmative defense. The reason for this exception to the general rule that a defense of lack of jurisdiction is not barred by estoppel is the primary rationale of *Gore*: the legislative purpose underpinning the

---

[3] Defendants also rely on our statement in *Gore* that "We have long held that a condition precedent, unlike subject matter jurisdiction, may be waived by the beneficiary party by virtue of its conduct." *Gore*, 362 N.C. at 38 (citing *Johnson & Stroud v. R.I. Ins. Co.*, 172 N.C. 142, 147-48 (1916)). We concede this sentence is an inaccurate statement in the context of the Workers' Compensation Act because here, at least, the timely-filing requirement is a condition precedent *to the invocation of the Commission's jurisdiction*. Accordingly, it implicates the subject-matter jurisdiction of the Commission. The provision in *Johnson & Stroud* was a term of a contract that was a condition precedent to liability under the contract and, accordingly, went to the merits of that case, not to the judicial power of a court or other body. By this anomalous sentence in *Gore* we did not abandon the view to which we have hewn since *Biddix* that assertion of the timely-filing requirement may be barred by estoppel *despite* implicating the subject-matter jurisdiction of the Commission, which after all is a creature of statute, since this interpretation best accomplishes the purpose of that statute.

Workers' Compensation Act, which is the statutory source of the Commission's jurisdiction. As we explained in *Gore*, "[t]his principle is consistent with the general guideline that the Workers' Compensation Act requires liberal construction to accomplish the legislative purpose of providing compensation for injured employees, and that this overarching purpose is not to be defeated by the overly rigorous 'technical, narrow and strict interpretation' of its provisions." *Id.* at 36. As an overly strict reading of the timely-filing requirement would frustrate this purpose, we reasoned that the jurisdiction conferred by the Workers' Compensation Act on the Commission was more generous than that which a fastidious adherence to the timely-filing requirement would entail and, accordingly, equitable estoppel could bar assertion of lack of jurisdiction as a defense. Indeed, procedural requirements are somewhat relaxed elsewhere in the Workers' Compensation Act. *See Belfield v. Weyerhauser Co.*, 77 N.C. App. 332, 336–37 (1985) (collecting examples). Although we acknowledged the legislative purpose of compensating workers for their injuries demanded a liberal construction in holding equitable estoppel may bar a defendant from assertion of the timely-filing requirement, this decision merely construed the reach of the Commission's jurisdiction consistent with the Act's legislative purpose; it did not convert a jurisdictional provision into a non-jurisdictional one. We conclude that *Gore* fails to support defendants' argument that a finding regarding the timely-filing requirement is not jurisdictional.

¶ 26　　Finally, while this Court is not bound by decisions of the Court of Appeals, that court has consistently applied a de novo standard of review to the Commission's findings under N.C.G.S. § 97-24, treating them as jurisdictional. *See, e.g., Hall v. U.S. Xpress, Inc.*, 256 N.C. App. 635, 640 (2017); *Craver v. Dixie Furniture Co.*, 115 N.C. App. 570, 577 (1994); *Weston v. Sears Roebuck & Co.*, 65 N.C. App. 309, 314 (1984), *disc. rev. denied*, 311 N.C. 407 (1984).

¶ 27　　In summary, we hold that a finding by the Commission as to whether an employee seeking workers' compensation complied with N.C.G.S. § 97-24's timely-filing requirement is a jurisdictional fact and, as such, is subject to de novo review.

**B. Application of the Timely-Filing Requirement**

¶ 28　　Having determined the Court of Appeals used the appropriate, de novo standard of review for review of jurisdictional facts, we now consider whether it erred in applying that standard in its review of the Commission's findings. In its (jurisdictional) findings of fact below, the Commission determined that the 2014 claim was barred because defendant-employer "did not pay for medical treatment beyond April 2015," and plaintiff did not file a claim within two years. The Court of Appeals held the Commission erred in so finding because evidence in the record showed that "plaintiff's return visit to Mr. Murray on 25 April 2017—which he related back to his 2014–15 treatment of [p]laintiff and was paid for by [d]efendant-[e]mployer—was related to her alleged 27 May 2014 injury." *Cunningham*, 273 N.C. App. at 507.

¶ 29        We agree. Applying a de novo standard of review and freely substituting our own judgment, the evidence in the record tends to show that plaintiff's 25 April 2017 visit to Mr. Murray for treatment was related to her 27 May 2014 injury. Specifically, Mr. Murray testified that plaintiff returned for treatment in April 2017 because "[s]he continued to have some back pain." Furthermore, plaintiff had received treatment from another doctor for plantar fasciitis and, as Mr. Murray testified, "at some point . . . towards the end of that treatment, the doctor . . . felt that maybe the pain she was having in her feet was coming from her back." Finally, in his notes from the 25 April 2017 visit, Mr. Murray stated "plaintiff is familiar with me for treatment of a previous episode of back pain about two years ago. She reports that her symptoms never completely went away." In addition to Mr. Murray's testimony, Dr. Dave also testified that when he saw plaintiff in July 2017 for treatment for chronic back pain, "her current presentation was chronic pain involving the lower back for about three and a half years," which coincides with the 27 May 2014 injury. Furthermore, when plaintiff went to Dr. Jones in July 2017, she reported her chronic back pain had an onset date of 19 June 2014, coinciding with the 27 May 2014 injury.

¶ 30        The Commission, on the other hand, points to no evidence in the record in its findings to support its conclusion that plaintiff's last medical treatment for the 27 May 2014 injury was in 2015. The Court of Appeals surmised that the Commission's finding may have been based on the "discontinuation note" Mr. Murray placed in

plaintiff's file after she did not return after the March 2015 visit, which he testified occurs when "people don't come back [for treatment]." Although this discontinuation note taken in isolation may be some evidence that plaintiff's medical treatment for the 27 May 2014 injury was completed in 2015, the Commission erred in relying on it for several reasons. First, the discontinuation note is contradicted by Mr. Murray's own subsequent testimony, which all showed that plaintiff continued to suffer chronic back pain stemming from the 27 May 2014 injury and that she sought and obtained subsequent treatment from several doctors and from Mr. Murray himself for that pain. Second, overwhelmingly, the greater weight of the evidence, including Dr. Dave's testimony and plaintiff's testimony, supports the contrary conclusion that plaintiff's back pain was chronic and stemmed from the 27 May 2014 injury. Finally, as the Court of Appeals reasoned, elevating the discontinuation note above other contradictory testimony in the record, and the greater weight of the evidence, "is the sort of 'technical, narrow[,] and strict interpretation' of workers' compensation provisions our case law warns against." *Id.* at 507–08 (quoting *Gore*, 362 N.C. at 36).

¶ 31    Defendants rely principally on the testimony of Dr. Jones, who opined "that plaintiff's current pain, more likely than not, was related to her 2011 injury." However, Dr. Jones' testimony does not support defendants' argument that "consequences from the May 2014 incident had resolved, and that after March 2015, [p]laintiff's spine returned to its baseline level of abnormality and chronic pain she

had suffered ever since settling her 2011 injuries," which were settled. The proposition that chronic back pain following any new back injury is attributable solely to an old one is unsupported by evidence in the record and, moreover, would frustrate the beneficent purposes of the Workers' Compensation Act of ensuring compensation for every injury attributable to the employee's work.

¶ 32        Applying the de novo standard of review to the Commission's findings regarding the timely-filing requirement, we hold the greater weight of the evidence supports that plaintiffs' 2017 medical treatment was for the 27 May 2014 injury. Accordingly, since she filed her Form 18 on 19 May 2017, her claim was not barred by N.C.G.S. § 97-24.

### III.    Conclusion

¶ 33        We conclude (1) findings by the Commission regarding the timely-filing requirement under N.C.G.S. § 97-24 are subject to de novo review; and (2) the Court of Appeals properly held the Commission erred in finding that plaintiffs' last medical treatment for her 27 May 2014 injury was in 2015, not 2017. Accordingly, we affirm the decision of the Court of Appeals, and remand for further remand to the Commission for consideration of the merits of plaintiff's 27 May 2014 injury claim.

AFFIRMED

Justice BERGER did not participate in the consideration or decision of this case.

Chief Justice NEWBY dissenting.

This case requires us to determine whether the Full Commission properly dismissed plaintiff's claim because she did not timely file her claim with the Industrial Commission. As relevant to this case, an injured plaintiff must file a claim with the Industrial Commission within two years of a defendant's last payment of medical compensation for a prior injury. Here the Full Commission found that defendant last paid plaintiff medical compensation for her prior injury in April of 2015. Moreover, the Full Commission found that plaintiff did not file her claim within two years of that payment. Thus, the Full Commission concluded that plaintiff's claim was barred and dismissed the claim. The Full Commission's findings of fact are supported by competent evidence, and those findings in turn support the Full Commission's conclusions of law. Therefore, the opinion of the Court of Appeals should be reversed, and the Full Commission's order should be affirmed. I respectfully dissent.

"Under our Workers' Compensation Act, 'the [Industrial] Commission is the fact finding body.' " *Gore v. Myrtle/Mueller*, 362 N.C. 27, 40, 653 S.E.2d 400, 409 (2007) (quoting *Brewer v. Powers Trucking Co.*, 256 N.C. 175, 182, 123 S.E.2d 608, 613 (1962)). This Court reviews "an order of the Full Commission only to determine 'whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law.' " *Medlin v.*

*Weaver Cooke Constr., LLC*, 367 N.C. 414, 423, 760 S.E.2d 732, 738 (2014) (quoting *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000)). "Because the Industrial Commission is the sole judge of the credibility of the witnesses and the weight of the evidence[,] [w]e have repeatedly held that the Commission's findings of fact are conclusive on appeal when supported by competent evidence, even though there [may] be evidence that would support findings to the contrary." *Id.* (first and second alterations in original) (internal quotations omitted).

¶ 36        Plaintiff's claim is governed by N.C.G.S. § 97-24, which states that

> [t]he right to compensation under this Article shall be forever barred unless . . . (ii) a claim . . . is filed with the Commission within two years after the last payment of medical compensation when no other compensation has been paid and when the employer's liability has not otherwise been established under this Article.

N.C.G.S. § 97-24(a) (2021). This requirement "has repeatedly been held to be a condition precedent to the right to compensation." *Gore*, 362 N.C. at 38, 653 S.E.2d at 408 (citing *Montgomery v. Horneytown Fire Dep't*, 265 N.C. 553, 555, 144 S.E.2d 586, 587 (1965) (per curiam)). This "condition precedent establishes a time period in which suit must be brought in order for the [claim] to be recognized." *Boudreau v. Baughman*, 322 N.C. 331, 340–41, 368 S.E.2d 849, 857 (1988).

¶ 37        Here it was undisputed that defendant paid no other compensation and that defendant's liability had not otherwise been established. Accordingly, for plaintiff's claim to be timely under N.C.G.S. § 97-24(a)(ii), plaintiff must have filed her claim

within two years of defendant's last payment of medical compensation. Plaintiff argues that her 25 April 2017 visit with Frank Murray, the on-site physical therapist, was related to her 27 May 2014 injury. Defendant paid for this treatment in May of 2017; therefore, plaintiff contends that her claim, filed on 19 May 2017, was filed within two years of defendant's last payment of medical compensation. Thus, the Full Commission was tasked with determining whether plaintiff's treatment with Frank Murray on 25 April 2017 was related to her 27 May 2014 injury such that her claim was timely. This analysis requires the Full Commission to make numerous credibility and weight determinations—a task it is designed to do. In resolving this issue, the Full Commission found as follows:

> 5.      Following the 27 May 2014 incident, plaintiff received medical treatment from defendant-employer's dispensary, an on-site medical facility that treats employees' injuries and ailments that are work-related and non-work-related. Plaintiff received no indemnity benefits. Plaintiff last received medical treatment for the 27 May 2014 incident on 3 March 2015. Per protocol, defendant[ ] paid for this treatment in April 2015 at the latest. Defendant[ ] did not pay for medical treatment for the 27 May 2014 incident beyond April 2015.
>
> . . . .
>
> 16.      . . . . In this matter, the last payment for medical treatment consequent of the 27 May 2014 incident was made in April 2015. Plaintiff did not file an Industrial Commission Form 18 until May 2017.
>
> 17.      Plaintiff's testimony regarding the circumstances surrounding the 25 April 2017 alleged

injury and related facts conflicts with a preponderance of
the testimony and documentary evidence.

¶ 38      The Full Commission's resolution of this factual dispute is supported by competent evidence. Frank Murray testified that he first treated plaintiff on 10 October 2011 after she "reported that she lifted a tire and felt a sharp pain in [her] low back at that time." Plaintiff and defendant settled the claims arising from this injury. Frank Murray then saw plaintiff again on 3 June 2014, when she reported "that she had an onset of low-back pain one week previous [on 27 May 2014] . . . as she was reaching and pulling a tire from the bottom of the flatbed." Frank Murray testified that he provided treatment for this injury until 3 March 2015. Defendant paid for this final treatment in April of 2015. Frank Murray later marked the note from the 3 March 2015 visit as a "discontinuation note" because plaintiff had not returned for additional treatment. Frank Murray further testified that plaintiff returned for an additional visit on 25 April 2017 after plaintiff's podiatrist thought that "the pain that she was having in her feet was coming from her back, so he recommended that she go and see about her back." Frank Murray described plaintiff's pain in 2017 as "a[n] ongoing, continuation of low-back pain. I mean, it kind of sounds as if, like, she's had . . . a baseline level of low-back pain with episodic increases and decreases since the first time that I saw her."

¶ 39      Kelly Avant, a case manager at the on-site medical clinic, testified that plaintiff visited her twice on 28 April 2017. Kelly Avant's note recorded plaintiff's statements

during her first visit that day as follows:

> I went and saw Frank (Murray MSPT) for my back on
> Tuesday and he said I might need an[ ] x[-]ray or
> something, so he told me to come see you. You remember
> Leslie (Byrne NP) when I hurt my back the first time, she
> never ordered an x[-]ray or anything, the second time I hurt
> my back I saw [another doctor] and did therapy with Frank
> [Murray]. My pain level has always been a level [three], I
> can only remember being pain free for [two] days. I got to
> the point where I couldn't walk, so I went to see the
> podiatrist (Dr. Eaton/Cape Fear Podiatry) and he gave me
> injections . . . . I went back to see Dr. Eaton a couple weeks
> ago and he said that plantar fasciitis is not my problem and
> he thinks it is my back . . . . When I got hurt before I was
> on the 1300 row and that is the worst row . . . .

When plaintiff returned later that day, Kelly Avant informed plaintiff she would have to pay for diagnostic treatment with her own insurance. Plaintiff returned to the medical clinic a third time that evening, "stating 'I need to file an injury from 4/25/17. I didn't know that if I had another injury that I could file a claim. There was a tire stuck in the press and caused my lower back to hurt.'"

¶ 40 Several of the doctors who treated plaintiff also testified. Dr. David S. Jones, a neurologist who treated plaintiff in 2011 and 2017, attributed plaintiff's low-back pain to her 2011 injury. Dr. Nailesh Dave, a neurologist who treated plaintiff for pain management beginning on 19 July 2017, acknowledged that plaintiff's symptoms could have been related to her previous injury in 2011 or a general deterioration of her spine. Dr. Gurvinder Deol, an orthopedic surgeon who treated plaintiff on 29 March 2018, testified that plaintiff's pain "relates back to this initially picking up the

tire in 2011."

¶ 41        Thus, competent evidence demonstrates that plaintiff began having low-back pain starting at least with her injury on the 1300 row in 2011. Plaintiff then settled workers' compensation claims arising from that injury. After settling those claims, plaintiff continued to experience low-back pain. Allegedly, plaintiff subsequently suffered another injury on 27 May 2014. Defendant paid for treatment related to this alleged injury through its on-site medical clinic until April of 2015. When plaintiff did not return for further treatment, her file was marked as discontinued. Plaintiff did not file a workers' compensation claim and defendant did not pay for further treatment until 2017. After plaintiff's podiatrist suggested the pain in plaintiff's feet could be related to her low-back pain, plaintiff returned to Frank Murray on 25 April 2017. Defendant paid for this treatment with Frank Murray in May of 2017. As the Full Commission found, though, this treatment was not related to the alleged incident on 27 May 2014, but rather resulted from a continuation of plaintiff's ongoing low-back pain that started as early as 2011. Plaintiff's own statements from 28 April 2017 demonstrate that since her injury in 2011, "[m]y pain level has always been a level [three], I can only remember being pain free for two days."

¶ 42        The Full Commission's supported findings demonstrate that defendant's "last payment for medical treatment consequent of the 27 May 2014 incident was made in April 2015." Moreover, the Full Commission found that plaintiff "did not file an

Industrial Commission Form 18 until May 2017," more than two years later. Accordingly, the Full Commission concluded that plaintiff failed to satisfy the condition precedent in N.C.G.S. § 97-24 and her claim was barred. Because this conclusion is supported by the findings of fact, the Full Commission's order should be affirmed.

¶ 43    To broaden appellate review, the majority holds that whether a plaintiff timely files a claim under N.C.G.S. § 97-24 is a "jurisdictional fact" subject to de novo review. Contrary to the majority's characterization, in *Gore* this Court flatly rejected the jurisdictional approach to N.C.G.S. § 97-24. 362 N.C. at 38, 653 S.E.2d at 407–08. In *Gore*, the plaintiff sought to estop the defendant from asserting that N.C.G.S. § 97-24 barred the claim. *Id.* at 32, 653 S.E.2d at 404. In response, the defendant argued that the plaintiff's failure to timely file under N.C.G.S. § 97-24 had deprived the Industrial Commission of jurisdiction over the plaintiff's claim. *Id.* at 38, 653 S.E.2d at 407–08. The defendant then contended that once the Industrial Commission was deprived of jurisdiction by a plaintiff's failure to timely file, a defendant cannot restore jurisdiction to the Industrial Commission through its actions. *Id.* Thus, because the defendant saw N.C.G.S. § 97-24 as jurisdictional, the defendant contended estoppel could not apply. *Id.* at 38, 653 S.E.2d at 408. In rejecting this approach, we stated in full as follows:

> In contrast, defendants urge this Court to resurrect
> an antiquated approach extinguished by modern estoppel

principles in all but a few jurisdictions. As a leading treatise explains, modern application of estoppel and waiver in the present context serves 'as an antidote to the earlier approach, which was the highly conceptual one of saying that timely claim (and sometimes even notice) was "jurisdictional[.]" ' *Larson's* [*Workers' Compensation Law*], 7 § 126.13[1]. Defendants' argument tracks this 'jurisdictional' approach, and relies entirely on cases decided before the adoption of modern principles of waiver and estoppel designed to ameliorate its harsh effects. The overwhelming majority of modern cases 'belie[ ] the present validity of the ["jurisdictional"] idea,' however, which continues to survive in only a tiny minority of jurisdictions amidst strong criticism. *See, e.g., id.* (describing the minority rule as 'curious word-magic' designed to exalt the statutory claims' filing requirement as 'a defense outside the reach of waiver, estoppel, or anything else'). To be sure, *Biddix* and *Belfield* have made clear that this outdated procedural hurdle has no place in our modern jurisprudence.

*Id.* at 38, 653 S.E.2d at 407–08 (first, third, and fourth alterations in original) (referencing *Biddix v. Rex Mills, Inc.*, 237 N.C. 660, 75 S.E.2d 777 (1953); *Belfield v. Weyerhaeuser Co.*, 77 N.C. App. 332, 335 S.E.2d 44 (1985)).

¶ 44 We then noted that N.C.G.S. § 97-24 "has repeatedly been held to be a condition precedent to the right to compensation." *Id.* at 38, 653 S.E.2d at 408 (citing *Montgomery*, 265 N.C. at 555, 144 S.E.2d at 587). We also noted that this Court has "long held that a condition precedent, unlike subject matter jurisdiction, may be waived by the beneficiary party by virtue of its conduct." *Id.* Thus, we held that the timely filing requirement under N.C.G.S. § 97-24 was not jurisdictional and that a "defendant[ ] could waive the two[-]year condition precedent laid out in N.C.G.S.

§ 97-24." *Id.*

¶ 45      Nonetheless, the majority "resurrect[s this] antiquated [jurisdictional] approach," *id.* at 38, 653 S.E.2d at 407, because, in its view, the timely filing requirement "implicates the subject-matter jurisdiction of the Commission." Jurisdiction, however, "rests upon the law and the law alone. It is never dependent upon the conduct of the parties." *In re T.R.P.*, 360 N.C. 588, 595, 636 S.E.2d 787, 793 (2006) (quoting *Feldman v. Feldman*, 236 N.C. 731, 734, 73 S.E.2d 865, 867 (1953)). The Industrial Commission's jurisdiction "is limited and conferred by statute." *Pearson v. C.P. Buckner Steel Erection Co.*, 348 N.C. 239, 241, 498 S.E.2d 818, 819 (1998). Though a party invokes the Industrial Commission's authority by timely filing a claim, the party does not confer jurisdiction upon the Industrial Commission. *See Letterlough v. Atkins*, 258 N.C. 166, 168, 128 S.E.2d 215, 217 (1962) (stating that the Industrial Commission's "jurisdiction may not be enlarged or extended by act or consent of the parties, nor may jurisdiction be conferred by agreement or waiver"). Accordingly, whether a party timely filed is not a jurisdictional question. Moreover, holding that the timely filing requirement is jurisdictional theoretically seems to put it beyond the reach of estoppel. *See Hart v. Thomasville Motors, Inc.*, 244 N.C. 84, 88, 92 S.E.2d 673, 676 (1956) ("Jurisdiction [of the Industrial Commission] cannot be obtained by consent of the parties, waiver, or estoppel."). Though the majority claims their approach is "consistent with the Act's legislative purpose" of "providing

compensation for injured employees," *Gore*, 362 N.C. at 36, 653 S.E.2d at 406, it could in fact work to hinder that purpose. Broadening appellate judicial authority to allow de novo fact finding brings increased uncertainty to the process.

¶ 46        Under the proper standard of review, the Full Commission's finding that defendant did not pay for medical treatment related to plaintiff's 27 May 2014 injury beyond April of 2015 was supported by competent evidence. That finding, in turn, supported the conclusion of law that plaintiff's claim was barred because she did not timely file her claim. Accordingly, this Court should reverse the Court of Appeals, which reversed the Full Commission's dismissal of plaintiff's claim. I respectfully dissent.

Justice BARRINGER joins in this dissenting opinion.